UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KRISTALYN TALMER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 2:20-cr-00084-GZS-2 |
| v. | ) | 2:22-cv-00104-GZS |
| | ) | 2:21-cr-00004-GZS |
| UNITED STATES OF AMERICA, | ) | 2:23-cv-00110-GZS |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct her sentence. (Motion, 2:20-cr-00084-GZS, ECF No. 119; Supplemental Motion, 2:20-cr-00084-GZS, ECF Nos. 143; Amended Motion, 2:20-cr-00084-GZS, ECF No. 155, 2:21-cr-00004-GZS, ECF No. 35.) Following guilty pleas in two related cases, Petitioner was convicted of possession with intent to distribute fentanyl on two occasions; the Court sentenced Petitioner to ninety-five months in prison. (Judgment, 2:20-cr-00084-GZS, ECF No. 110, 2:21-cr-00004-GZS, ECF No. 29.)

Petitioner claims her attorney provided ineffective assistance by failing to consult with her about an appeal and because the attorney had a conflict of interest. (Amended Motion at 5.) The Government requests dismissal. (Response, ECF No. 2:20-cr-00084-GZS, ECF No. 164, 2:21-cr-00004-GZS, ECF No. 43.)

Following a review of the record and after consideration of Petitioner's motions and the Government's requests for dismissal, I recommend the Court grant the Government's requests and dismiss Petitioner's motions.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In October 2019, in Westbrook, Maine, state law enforcement officers stopped a vehicle Petitioner was operating with two passengers, John Southard and Robert Burton. (Revised Presentence Investigation Report (PSR) ¶ 6, 2:20-cr-00084-GZS, ECF No. 83, 2:21-cr-00004-GZS, ECF No. 15; Prosecution Version at 1, 2:21-cr-00004-GZS, ECF No. 7.) A search of the vehicle and the occupants revealed just over 40 grams of fentanyl, as well as other drugs, cash, and paraphernalia. (PSR ¶ 6; Prosecution Version at 1.)

In June 2020, following a tip from a confidential information, federal and state law enforcement officers surveilled Petitioner and Southard in South Portland, Maine. (PSR ¶ 7; Gagnon Affidavit ¶ 5, ECF No. 1-1.) Officers, who were aware of an outstanding felony warrant for Petitioner's arrest, observed the two individuals enter a black Lincoln SUV, travel to several stops, and make an exchange with someone from another vehicle. (PSR ¶ 7, Gagnon Affidavit ¶¶ 5–6.) When officers attempted to stop the Lincoln, Petitioner repeatedly attempted to flee and struck multiple vehicles before being taken into custody. (PSR ¶¶ 8–9; Gagnon Affidavit ¶ 7.) A search of the vehicle revealed 325 grams of fentanyl, as well as other drugs, cash, and paraphernalia. (PSR ¶ 10; Gagnon Affidavit ¶¶ 8, 10.)

In August 2020, based on the June 2020 incident, the Government filed a one-count criminal complaint against Petitioner for possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (Criminal Complaint, 2:20-cr-00084-GZS-2, ECF No. 1.) In November 2020, the grand jury indicted Petitioner on the same charge. (Indictment, 2:20-cr-00084-GZS-2, ECF No. 34.) The Government produced

some discovery materials that included a police officer's incident report which said that, during a phone call with her mother, Petitioner stated that she suspected that an individual named "Timmy" had "ratted" her out. (Amended Motion at 21.)

In January 2021, based on the October 2019 incident, the Government filed under a different docket number a one-count information charging Petitioner with possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (Information, 2:21-cr-00004-GZS, ECF No. 1.) At approximately the same time, the parties reached a plea agreement to resolve the charges in both cases. In consideration for Petitioner's guilty plea and the waiver of her right to appeal from a sentence not exceeding sixty months (the statutory mandatory minimum), the Government agreed to recommend three-level guideline reductions for acceptance of responsibility and a three-level variance for a plea via videoconference during the COVID-19 pandemic. (Plea Agreement, 2:20-cr-00084-GZS-2, ECF No. 65, 2:21-cr-00004-GZS, ECF No. 8.) Petitioner pled guilty in February 2021. (Change of Plea Hearing, 2:20-cr-00084-GZS-2, ECF No. 67, 2:21-cr-00004-GZS, ECF No. 10.)

In March 2021, the probation office initially recommended a guideline sentencing range of 140–175 months based on a criminal history category V, a base offense level of 30, a two-point enhancement for obstructing justice by creating a substantial risk of serious bodily injury or death when attempting to flee, and three-point reductions for acceptance of responsibility. (First Presentence Investigation Report ¶¶ 18, 22, 25–27, 50, 82, 2:20-cr-

00084-GZS-2, ECF No. 76, 2:21-cr-00004-GZS, ECF No. 12.)[1]  The probation office recommended the reductions for acceptance of responsibility even though Petitioner was twice found guilty by the disciplinary board at Cumberland County Jail for attempting to conceal and divert her prescription suboxone.  (*Id.* ¶ 15.)

In April 2021, Petitioner objected to the drug quantity that resulted in a base offense level of 30 and to the criminal history category of V because the defense had been unable to review the four lab reports and other documents supporting those factual findings. (Objections, 2:20-cr-00084-GZS-2, ECF No. 79, 2:21-cr-00004-GZS, ECF No. 14.) Petitioner also argued that she should have been given a two-level reduction for a minor role in the offense.  (*Id.*)  The probation office did not recommend that the Court apply the minor role reduction.  (PSR at 33–34.)  In May 2021, Petitioner withdrew the prior objections and presented written mitigating circumstances arguments.  (Transcript of Presence Conference at 2–3, 2:20-cr-00084-GZS-2, ECF No. 131, 2:21-cr-00004-GZS ECF No. 33; Sentencing Memorandum at 8, 2:20-cr-00084-GZS-2, ECF No. 94, 2:21-cr-00004-GZS, ECF No. 22).

The Government provided sentencing exhibits for the Court to consider on the acceptance of responsibility issue.  (Government's Sentencing Exhibits 1 and 2.)  In April and May, 2021, Petitioner was found guilty by the jail disciplinary board of trading her prescription suboxone for jewelry, and after the discipline was imposed, Petitioner

---

[1] The probation office also noted that the guideline calculation did not account for the three-level variance for the pandemic plea.  (*Id.* ¶ 83.)

approached multiple inmates asking them to rescind their statements that she was diverting and trading her medication. (Sentencing Transcript at 9–10, 2:20-cr-00084-GZS-2, ECF No. 132, 2:21-cr-00004-GZS, ECF No. 34.) One inmate wrote to Petitioner's attorney that she had lied about Petitioner's conduct, but the inmate later told jail staff that she had in fact lied in the letter to Petitioner's attorney. (*Id.*)

At the sentencing hearing in July 2021, the Court overruled most of Petitioner's arguments on the acceptance of responsibility issue and declined to apply the three-level reductions. (*Id.* at 13–15.) Based on a total offense level of 32 and criminal history category V, the Court calculated a guideline range of 188–235 months in prison, which, after granting the three-level covid variance, resulted in a final range of 140–175 months. (*Id.* at 14–16, 24.) The Court sentenced Petitioner to ninety-five months in prison. (*Id.* at 27; Judgment at 2.) Petitioner did not file an appeal.

In April, May, and June 2022, Petitioner filed a pro se § 2255 motion, additional attachments, and a supplemental motion. (Motion, 2:20-cr-00084-GZS-2, ECF No. 119, Letter, 2:20-cr-00084-GZS-2, ECF No. 136, Supplemental Motion, 2:20-cr-00084-GZS-2, ECF No. 143.)[2] After the Government had previously responded, on the Government's motion, the Court appointed postconviction counsel. (First Answer, 2:20-cr-00084-GZS-2, ECF No. 144; Motion for Counsel, 2:20-cr-00084-GZS-2, ECF No. 145; Order, 2:20-cr-

---

[2] Petitioner primarily argued that her attorney provided ineffective assistance by allegedly: (1) declining to present arguments about the quantity being impacted by the mixture of substances and that her personal use habits should have reduced the amount attributed to distribution activities; (2) failing to provide the court at sentencing with exculpatory evidence in her attorney's possession, namely the letter from the inmate who recanted her testimony about the suboxone; (3) failing to advise about or file a notice of appeal after preserving objections; and (4) cumulative error.

00084-GZS-2, ECF No. 146.) Petitioner's postconviction attorney subsequently filed an amended § 2255 motion. (Amended Motion, 2:20-cr-00084-GZS-2, ECF No. 155, 2:21-cr-00004-GZS, ECF No. 35.)

## DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002).

"[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'"  *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).  A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

**B.     Appeal Consultation**

Petitioner alleges that her attorney provided ineffective assistance by failing to consult adequately with her about filing an appeal. The Supreme Court has defined trial counsel's obligation concerning a defendant's right to appeal as follows:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

A defendant need not use "magic words" to "reasonably demonstrate" an interest in appealing; saying something that indicates a desire to pursue further relief that might be available is enough, but merely expressing displeasure at sentencing is insufficient to generate the duty to consult about an appeal. *Rojas-Medina v. United States*, 924 F.3d 9, 17 (1st Cir. 2019). The term "consult" in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. "If counsel has consulted with the defendant . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

Because a presumption of prejudice applies to a loss of the opportunity to pursue an appeal, "[a] defendant is not required to show that an appeal is likely to be successful," *Rojas-Medina*, 924 F.3d at 16, and a prior appeal waiver during a guilty plea does not destroy the presumption of prejudice if it is otherwise applicable. *Garza v. Idaho*, 139 S.

9

Ct. 738, 742 (2019). To satisfy the prejudice inquiry in this context, therefore, a defendant only needs to "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

Here, Petitioner does not assert that she specifically directed her attorney to file an appeal. Petitioner also does not assert that she said anything to counsel to demonstrate an interest in filing an appeal. Whether her attorney had a duty to consult, therefore, depends on whether, based on the information counsel knew or should have known, a rational defendant in Petitioner's position would want to appeal. When discussing the considerations relevant to whether a duty to consult exists in a case, the Supreme Court observed that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* at 480.

Petitioner pled guilty and did not expressly reserve issues for appeal. Although she waived her right to appeal a sentence not exceeding the mandatory minimum, the waiver does not apply because the sentence exceeded the mandatory minimum. Petitioner asserts that she did not receive the sentence for which she bargained, but the plea agreement expressly states that the appeal waiver threshold is not an estimate of the expected sentence, and Petitioner received other benefits of the plea agreement, including the three-point reduction for a video hearing during the pandemic. While the Government ultimately did not recommend the three-level reductions for acceptance of responsibility, the relevant

portion of the plea agreement expressly stated that the recommendation was subject to a reservation for new criminal conduct. Petitioner also received a sentence that was more than 30% below the bottom of the guideline range and more than 13% below the bottom of the guideline range even if she had not committed new criminal conduct and forfeited the acceptance of responsibility reductions.

Petitioner argues that she could have appealed from the acceptance of responsibility findings because (1) in deciding that issue the Court overruled Petitioner's arguments and thus the issue was preserved, and (2) the standard for "nonfrivolous" grounds for an appeal is a very low bar. While Petitioner need not show that an argument would prevail on appeal, the Supreme Court's rejection of a per se or near per se rule teaches that more is required than merely showing that Petitioner had the right to raise an issue on appeal. The requisite showing for raising a nonfrivolous ground for an appeal is not a particularly high bar, but a petitioner must be able to cite some plausible argument to support an appeal. In this case, Petitioner argues that it is enough that counsel could have raised the acceptance of responsibility issue on appeal, but the record lacks any evidence to support an argument that the Court's decision was erroneous. As the Court noted, the evidence that Petitioner engaged in the distribution of drugs in jail is uncontroverted. (Sentencing Transcript at 15.) A mere adverse ruling does not give rise to the duty to consult. Because the relevant factors weigh against a duty to consult, Petitioner cannot establish that she is entitled to relief to pursue an out-of-time appeal.

Even if the Court assumes there was a duty to consult, Petitioner has not carried her burden of showing that her attorney failed to consult with her regarding an appeal.

11

Petitioner's attorney asserted under the penalty of perjury that he was aware of the duty to consult and although he does not specifically recall the conversations with Petitioner two years prior, it was his standard practice to discuss the option of an appeal with all his clients before and after sentencing. (Second Peltier Declaration ¶¶ 2–3, 2:20-cr-00084-GZS ECF No. 164-1, 2:21-cr-00004-GZS ECF No. 43-1.) Petitioner asserts that, after sentencing, her attorney did not talk to her about filing an appeal, (Talmer Declaration ¶ 1, 2:20-cr-00084-GZS ECF No. 161, 2:21-cr-00004-GZS ECF No. 40), but Petitioner evidently does not contest counsel's claim regarding the discussion immediately preceding sentencing, which is relevant though not dispositive. Some of Petitioner's other assertions and other record evidence undermine her contention. For example, Petitioner claims that, after receiving the ninety-five-month sentence, she wanted to appeal, but she did not know that she had the right to appeal because of the waiver in the plea deal and because her attorney did not explain it to her. (*Id.* ¶ 2; Motion at 9; Attachment at 3, 2:20-cr-00084-GZS, ECF No. 119-1.) The Court explicitly informed Petitioner that she had the right to appeal from her sentence, that the waiver did not apply, that she must file an appeal in fourteen days, and that if she asked the clerk to do so, the clerk would file an appeal for her without cost; Petitioner confirmed that she understood. (Sentencing Transcript at 29–30.) If Petitioner's claim that she wanted to file an appeal had merit, she had been informed of the process and presumably would have contacted the clerk or spoken to her attorney about her wishes.

   Even if there was a duty to consult regarding an appeal, and even if counsel failed to consult adequately with Petitioner regarding an appeal, Petitioner has not established the requisite showing of prejudice for similar reasons. Because the Court explicitly informed

Petitioner that she had retained the right to appeal her sentence, that she could do so without cost, that the clerk would file an appeal for her if she merely contacted the clerk within fourteen days, and because Petitioner confirmed that she understood, the Court need not credit Petitioner's post hoc explanations in her latest filings. On this record, therefore, there is no basis for the Court to conclude there is a reasonable probability that, but for counsel's alleged deficient failure to consult with her about an appeal, Petitioner would have timely appealed.[3]

## C. Conflict of Interest

Petitioner argues that she was deprived of her right to effective assistance of counsel because her attorney had a conflict of interest. "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). When the conflict is of such a magnitude to be reasonably comparable to cases where counsel has been denied entirely during a critical stage of the proceeding, such as when a trial judge overrules a defendant's objection to the joint representation of co-defendants, an inquiry into prejudice is unnecessary and an automatic-reversal rule applies. *Mickens v. Taylor*, 535 U.S. 162, 166–68 (2002) (discussing *Holloway v. Arkansas*, 435 U.S. 475 (1978)).

---

[3] Petitioner argues that because counsel does not specifically recall the post-sentencing conversation with Petitioner about an appeal, and because Petitioner now alleges no conversation occurred, Petitioner is entitled to relief, or the Court must at least hold a hearing on the issue. More is necessary before the Court must conduct a hearing or permit an out of time appeal. A petitioner's assertion must be considered in the context of the record evidence. Otherwise, a petitioner could effectively extend the appeal period or generate a post-judgment hearing simply by alleging that a consultation did not occur regardless of the record evidence to the contrary and regardless of whether there was a basis for an appeal.

13

Otherwise, "[t]o prevail on a conflict-of-interest claim, a defendant must show that a conflict of interest actually affected the lawyer's performance." *United States v. Simon*, 12 F.4th 1, 53 (1st Cir. 2021) (quotation marks omitted); *see also*, *Mickens*, 535 U.S. at 168–171.  To establish a so-called "actual conflict," a petitioner "must demonstrate that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." *United States v. Ponzo*, 853 F.3d 558, 575 (1st Cir. 2017) (quotation marks omitted).[4]

Petitioner claims her attorney had a conflict of interest because at the time he represented her, the attorney also represented the informant who tipped off police to the location of Petitioner and her codefendant in June 2020, the individual Petitioner referred to as "Timmy" in prior conversations documented in the Government's disclosures during discovery.  Petitioner, however, has not identified any defense tactic that was undertaken or foregone due to the attorney's other representation.  The attorney asserts (and Petitioner does not dispute) that he represented the informant in a separate unrelated matter, and he was not aware at the time that the informant was one of his other clients.  (Peltier Declaration ¶¶ 5–8.)  Because he did not know that any of his tactics could impact another client, it is not plausible that his tactics were altered by his consideration of the other client's interests.

---

[4] If a petitioner can show an actual conflict that affected the adequacy of an attorney's representation, no additional prejudice inquiry under *Strickland* is necessary. *Id.*

14

Even if counsel deduced or should have deduced in or after November 2020 that the informant was one of his clients, on this record, Petitioner would still not be entitled to relief. Because the law enforcement officers did not conduct any searches or seizures until after they independently obtained probable cause based on their own observations, the informant's tip was legally unnecessary after that point. Challenging the tip would have served no purpose. Petitioner, therefore, has not demonstrated and cannot demonstrate that counsel decided not to challenge the tip because of the source of the tip. Indeed, if the matter had gone to trial, the Government could have introduced all the relevant evidence and proved its case without any testimony from the informant. The same is true for the sentencing phase. Because the informant's tip had no impact on any sentencing findings or guideline calculations, no action the attorney took or could have taken in support of Petitioner's interests would have negatively impacted the informant's legal interests.[5]

Because counsel was not aware of a conflict of interest and because Petitioner cannot show that counsel's knowledge of the informant's identity would have plausibly altered counsel's representation, Petitioner's ineffective assistance claim fails.[6]

---

[5] Petitioner faults the Government for not disclosing the potential conflict to defense counsel or the Court, but the argument does not alter the analysis. First, Petitioner has not established that any government employee knew of the potential conflict. Second, Petitioner has not explained how that issue impacted her legal rights. For example, Petitioner does not cite any authority supporting an ineffective assistance claim based on the Government's failure to disclose such information.

[6] To the extent Petitioner intended to maintain the arguments she asserted in her filings before postconviction counsel filed an amended motion, the arguments lack merit.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motions for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of October, 2023.