UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:20-cr-00084-JAW-2 |
| | ) | No. 2:21-cr-00004-JAW-1 |
| | ) | |
| KRISTALYN TALMER | ) | |

**OMNIBUS ORDER ON PENDING MOTIONS**

An incarcerated defendant brings numerous motions seeking to reduce her sentence, amend the underlying indictment, be granted a hardship credit, be appointed counsel, and be moved to home confinement or a rehabilitation center. In an omnibus order addressing all these pending motions, the court concludes it lacks jurisdiction to hear some the defendant's claims and the defendant failed to exhaust her administrative remedies for other motions. The court concludes the defendant's remaining arguments do not establish extraordinary and compelling reasons warranting compassionate release, and she failed to demonstrate her entitlement to appointment of counsel. The court dismisses all pending motions.

# I.  BACKGROUND

## A.  The Possession with Intent to Distribute 40 Grams or More of Fentanyl and Aiding and Abetting Charge: 2:20-cr-00084-JAW-2[1]

On November 5, 2020, a federal grand jury indicted Kristalyn Talmer[2] on one count of possession on June 11, 2020 with intent to distribute forty or more grams of a mixture containing a detectable amount of fentanyl, and aiding and abetting the same, a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[3]  *Indictment* at 1 (ECF No. 34).  Ms. Talmer pleaded guilty to this count before United States District Judge George Z. Singal on February 3, 2021.  *Min. Entry* (ECF No. 67).

## B.  The Possession with Intent to Distribute Fentanyl Charge: 2:21-cr-00004-JAW-1[4]

On January 21, 2021, the Government filed a notice of information charging Ms. Talmer with an additional count of possession with intent to distribute fentanyl,

---

[1]    Unless otherwise noted, all docket entries in this section are to Case No. 2:20-cr-00084-JAW-2.  At the time of sentencing, the case caption was 2:20-cr-00084-GZS-02.  *J.*, 2:20-cr-00084-JAW-02 (ECF No. 110).  The Clerk's Office revised the case caption to 2:20-cr-00084-JAW-02 when it reassigned the case to Judge John A. Woodcock, Jr. on December 29, 2023.  The Court uses the current case caption in this order.

[2]    The complaint and indictment also charged John Southard with the same offense.  *Compl.* (ECF No. 1); *Indictment* (ECF No. 34).  Ms. Talmer and Mr. Southard were a couple, and the Presentence Investigation Report (PSR) in this case indicates that Ms. Talmer changed her last name to Southard in February 2021, but they did not marry.  *See Report Pursuant to Am. 821 to the United States Sentencing Guidelines for Ineligible Def.* Attach. 1, *Revised Double Docket Presentence Investigation Report* ¶ 66, 2:20-cr-00084-JAW-02 (ECF No. 83); 2:21-cr-00004-JAW-01 (*PSR*).  As Ms. Talmer has used Talmer as her last name in her filings, the Court refers to her as she refers to herself.  On July 7, 2021, Judge Singal sentenced Mr. Southard to 100 months of incarceration, no fine, eight years of supervised release and a $200 special assessment.  *J.*, 2:20-cr-00084-JAW-01 (ECF No. 115).

[3]    This case against Ms. Talmer began first as a state charge, which was brought on June 11, 2020, *PSR* ¶ 1, and then as a federal criminal complaint brought on August 14, 2020 charging possession with the intent to distribute fentanyl.  *Compl.* (ECF No. 1).

[4]    Unless otherwise noted, all docket entries referenced in this section are to Case No. 2:21-cr-00004-JAW-1.  Similarly to the prior footnote, the case caption at the time of sentencing was 2:21-cr-00004-GZS-01.  *J.*, 2:21-cr-00004-JAW-01 (ECF No. 29).  The case caption was revised to 2:21-cr-00004-

and aiding and abetting the same, on October 25, 2019 in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *Information* (ECF No. 1). On February 3, 2021, Ms. Talmer waived her right of indictment and pleaded guilty to this count. *Oral Waiver of Indictment* (ECF No. 9); *Min. Entry* (ECF No. 10).

### C.    The July 6, 2021 Dual Sentencing

On July 6, 2021, Judge Singal sentenced Ms. Talmer to a term of ninety-five months of incarceration, four years of supervised release, no fine and a special assessment of $100 on count one in docket number 2:20-cr-00084-JAW-02. *J.* (ECF No. 110). That same day, Judge Singal sentenced Ms. Talmer to a concurrent term of ninety-five months of incarceration, three years of supervised release, no fine, and a special assessment of $100 on count one in docket number 2:21-cr-00004-JAW-01. *J.* (ECF No. 29).

### D.    Previously Resolved Post-Sentencing Motions[5]

On April 25, 2022, Ms. Talmer filed a motion for compassionate release and for the appointment of counsel, informing the Court of health conditions impacting her mother. *Mot. to Reduce Sentence & Mot. to Appoint Counsel* (ECF No. 127). She followed this filing with a motion for credit for time served on June 27, 2022. *Mot. for Credit for Time Served* (ECF No. 142). Judge Singal dismissed Ms. Talmer's motions on August 30, 2022, finding that she had failed to exhaust her administrative remedies to bring a compassionate release motion and that the Court lacked

---

JAW-01 when the case was reassigned to Judge John A. Woodcock, Jr. on December 29, 2023. The Court uses the current case caption for the purposes of this order.

[5]    Unless otherwise noted, all docket entries in this section are to Case No. 2:20-cr-00084-JAW-2.

jurisdiction to provide relief on her request for credit for time served.  Judge Singal explained her request for credit for prior time served is a challenge properly brought as "a habeas corpus proceeding under 28 U.S.C. § 2241 in the district possessing authority over her place of confinement." *Order on Mots. for Compassionate Release & Credit for Time Served* at 3 (ECF No. 150).

### E.    Pending Post-Sentencing Motions

In the past year, Ms. Talmer has filed numerous motions seeking various forms of post-conviction relief, including requests to amend the indictment, for compassionate release, for hardship credit, for appointment of counsel, and for release to home confinement or a rehabilitation center.  The Court issues this omnibus order in response to all pending motions.

#### 1.    Motions for Compassionate Release and Sentence Reduction

On December 29, 2023, Ms. Talmer moved the Court for a grant of compassionate release.  *Mot. for Compassionate Release*, 2:20-cr-00084-JAW-02 (ECF No. 169); 2:21-cr-00004-JAW-01 (ECF No. 47) (*Pet'r's First Mot.*).  The Government opposed Ms. Talmer's motion on January 18, 2024.  *Gov't's Resp. in Opp. to Mot. for Compassionate Release*, 2:20-cr-00084-JAW-02 (ECF No. 178); 2:21-cr-00004-JAW-01 (ECF No. 51) (*Gov't's First Opp'n*).

Meanwhile, on January 12, 2024, Ms. Talmer again moved the Court to reduce her sentence.  *Mot. for Sentence Reduction*, 2:20-cr-00084-JAW-02 (ECF No. 172); 2:21-cr-00004-JAW-01 (ECF No. 49) (*Pet'r's Second Mot.*).  The Government opposed Ms. Talmer's motion on February 2, 2024.  *Gov't's Consolidated Resp. in Opp'n to*

*Mots. to Reduce Sentence and Mots. for Hardship Credit*, 2:20-cr-00084-JAW-02 (ECF No. 182); 2:21-cr-00004-JAW-01 (ECF No. 52) (*Gov't Second Opp'n*).  On April 15, 2024, Ms. Talmer submitted additional documentation in support of her motion. *Additional Attachs.*, 2:20-cr-00084-JAW-02 (ECF No. 183); 2:21-cr-00004-JAW-01 (ECF No. 54) (*Pet'r's Second Mot. Attachs.*).

On May 20, 2024, Ms. Talmer filed a third motion asking the Court to reduce her sentence, as well as an attached motion seeking FSA credit and asking the Court to recode her case.  *Mot. for Sentence Reduction*, 2:20-cr-00084-JAW-02 (ECF No. 184); 2:21-cr-00004-JAW-01 (ECF No. 56) (*Pet'r's Third Mot.*); *Mot. for FSA Credit and to Recode Case*, 2:20-cr-00084-JAW-02 (ECF No. 184-1); 2:21-cr-00004-JAW-01 (ECF No. 56-1) (*Pet'r's FSA Credit Mot.*).  She then filed a series of documents supplementing her motion on June 4, 2024.  *Additional Attachs.*, 2:20-cr-00084-JAW-02 (ECF No. 185); 2:21-cr-00004-JAW-01 (ECF No. 57) (*Pet'r's Third Mot. First Attachs.*).  On June 10, 2024, the Government submitted its opposition to Ms. Talmer's third motion for sentence reduction and attached motion for FSA credits and to recode her case.  *Gov't Consolidated Resp. in Opp'n to Mots. to Reduce Sentence, for FSA Credits, and to Recode Case*, 2:20-cr-00084-JAW-02 (ECF No. 187); 2:21-cr-00004-JAW-01 (ECF No. 59) (*Gov't Third Opp'n*).  Finally, on December 5, 2024, Ms. Talmer filed another set of additional attachments in support of her motion. *Additional Attachs.*, 2:20-cr-00084-JAW-02 (ECF No. 190); 2:21-cr-00004-JAW-01 (ECF No. 62) (*Pet'r's Third Mot. Second Attachs.*).

### 2.     Motions for Hardship Credit

On January 12, 2024, Ms. Talmer filed two separate motions seeking hardship credit for her time spent incarcerated at two respective federal facilities during the COVID-19 pandemic. *Mot. for Hardship Credit for Hard Time Served* at 1, No. 2:20-cr-00084-JAW-2 (ECF No. 174) (*Pet'r's First Hardship Mot.*); *Mot. for Hardship Credit for Hard Time Served* at 1, No. 2:20-cr-00084-JAW-2 (ECF No. 176) (*Pet'r's Second Hardship Mot.*). In its consolidated opposition filed on February 2, 2024, the Government also opposed both of Ms. Talmer's motions for hardship credit. *Gov't's Second Opp'n.*

### 3.     Motion to Amend Information

On March 29, 2024, Ms. Talmer submitted a letter to the Court requesting the wording of her charging document be changed to reflect that the drugs for which she was convicted constituted "her[oi]n that tested for a <u>trace</u> of fentanyl in it," as opposed to pure fentanyl. *Mot. to Amend Info.*, 2:21-cr-00004-JAW-01 (ECF No. 53) (*Pet'r's Mot. to Amend*) (emphasis in original). The Government responded in opposition on April 22, 2024, protesting that Ms. Talmer's "motion to amend is both factually and legally unavailing." *Gov't's Resp. in Opp'n to Mot. to Amend* at 2, 2:21-cr-00004-JAW-01 (ECF No. 55) (*Gov't's Amend Opp'n*).

### 4.     Motion for Release to Home Confinement or Rehabilitation Center and for Appointment of Counsel

On September 24, 2024, Ms. Talmer filed a motion asking the Court to appoint counsel and to revise her sentence to home confinement or confinement in a rehabilitation center within Portland, Maine. *Mot. for Ct. Appointed Counsel [and]*

*for Home Confinement or Rehabilitation Ctr. Within Portland[,] Maine*, 2:20-cr-00084-JAW-02 (ECF No. 188); 2:21-cr-00004-JAW-01 (ECF No. 60) (*Pet'r's Mot. for Counsel & Home Confinement*).   On October 15, 2024, the Government opposed Ms. Talmer's motion.   *Gov'ts Consolidated Resp. in Opp'n to Mots. for Court-Appointed Counsel and for Release to Either Home Confinement or Local Rehabilitation Ctr.*, 2:20-cr-00084-JAW-02 (ECF No. 189); 2:21-cr-00004-JAW-01 (ECF No. 61) (*Gov't's Opp'n to Mot. for Counsel & Home Confinement*).

## II.   MOTION TO AMEND INFORMATION[6]

Though filed later than some of the motions subsequently discussed, Ms. Talmer's motion to amend her charging documents implicates her underlying conviction and addresses with specificity a recurring theme of her other motions for

---

[6]   Ms. Talmer's letter to the Court does not contain a title or a docket number, and there is some confusion about whether she wishes to amend the indictment or the information.   The indictment under 2:20-cr-00084-JAW-02 alleged an incident of June 11, 2020 involving 40 or more grams of fentanyl.   *Indictment* at 1.   The information under 2:21-cr-00004-JAW-01 alleged an incident of October 25, 2019, involving fentanyl but not 40 or more grams.   *Information* at 1.   Ms. Talmer attached the information to her letter motion, *Pet'r's Mot. to Amend* Attach. 1, *Information*, the prosecution version for 2:21-cr-00004-JAW-01, *id.*, and a portion of the affidavit for the criminal complaint that preceded the indictment.   *Id.*   The gist of her motion to amend, however, involves the allegation in the indictment that Ms. Talmer possessed forty grams or more of fentanyl and the impact of this allegation on her ability to obtain earned time credits under the First Step Act.

   Presumably because Ms. Talmer attached the information to her letter, the Court Clerk designated this filing as a motion to amend information.   *Pet'r's Mot. to Amend.*   However, given the substance of her letter motion, it seems apparent that she wishes to amend the indictment, not the information.   As a pro se litigant, the Court liberally construes Ms. Talmer's filings.   *See Gakuba v. Frey*, Nos. 23-1084, 23-1095, 2024 U.S. App. LEXIS 18703, at *1 (1st Cir. Apr. 10, 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).   Taken in context, the Court considers Ms. Talmer's letter as requesting a change to the language of the charge in the indictment in 2:20-cr-00084-JAW-2, despite it being filed within docket number 2:21-cr-00004-JAW-01.   Ms. Talmer could not be seeking to change an allegation in the information that she possessed forty grams or more of fentanyl because the information makes no such reference.   Unless otherwise noted, all docket entries referenced in this section are to Case No. 2:21-cr-00004-JAW-1.

relief.  Thus, in the interests of efficiency and clarity, the Court begins by addressing Ms. Talmer's motion to amend.

### A.    The Parties' Positions

#### 1.    Kristalyn Talmer's March 29, 2024 Motion to Amend Information

On March 29, 2024, Ms. Talmer requested the wording of her charging document be changed to reflect that the drugs for which she was convicted constituted "her[oi]n that tested for a <u>trace</u> of fentanyl in it," as opposed to pure fentanyl.  *Pet'r's Mot. to Amend*) (emphasis in original).  She claims that "[i]f [she] [k]new back then that wording would stop [her] from getting [her] [First Step Act (FSA)] [she] would have fought it" and argues that the weight of the fentanyl alone would have been less than forty grams.  *Id.* at 1-2.  She asserts her knowledge of another inmate who "gets FSA and she had the same thing."  *Id.* at 3.

Ms. Talmer continues that she takes "full responsibility for [her] actions" and emphasizes that during her term of incarceration she has taken mental health classes, obtained a GED, and has not failed a drug test.  *Id.* at 2.  She attributes her criminal conduct to the throes of her addiction, noting "[a]ll [she] thought about was [her] drug habit."  *Id.* at 3.  She asserts the skills she learned in the Residential Drug Addiction Program (RDAP) will prevent a relapse.  *Id.* at 3-4.

Ms. Talmer also tells the Court that another inmate untruthfully implicated her in possession of suboxone, which resulted in a thirty-five-month addition to her sentence and claims the inmate has subsequently admitted her statement's falsity to Ms. Talmer's defense counsel.  *Id.* at 4-5.  She adds that she has a pending Prison

Rape Elimination Act (PREA) case against an officer from her time being held at an Oklahoma facility. *Id.* at 5. Finally, the Defendant writes that she suffers "major back pain" from issues including "2 pinched nerves, bone spurs, [four] bulging disk[s] [] and . . . a wisdom tooth that they can[']t take out because it[']s on a nerve." *Id.* at 6.

At bottom, Ms. Talmer asks the Court to "either step in and give [Ms. Talmer her] FSA back or to change the wording to a mixture of substance containing fentanyl [] [s]o [she] can get [her] FSA back." *Id.* at 4.

## 2. The Government's April 22, 2024 Response to Motion to Amend Information

The Government opposes any court-ordered change to the Defendant's charging documents, protesting that Ms. Talmer's "motion to amend is both factually and legally unavailing." *Gov't's Amend Opp'n.*

The Government points to the Defendant's January 29, 2021 plea agreement, in which "she agreed to plead guilty to both charging documents, including the indictment charging her with possessing with intent to distribute 40 grams or more of fentanyl." *Id.* (citing *Agreement to Plead Guilty* at 1 (ECF No. 8) (*Guilty Plea*)). Further, the Government says, "she agreed to the prosecution version for both offenses set forth in the plea agreement, including the fact that she and another person possessed and intended to distribute a mixture or substance containing a detectable amount of fentanyl with a net weight that exceeded 40 grams." *Id.* (citing *Guilty Plea* at 3-4). The Government avers Ms. Talmer's plea agreement also includes a provision waiving her right to appeal her guilty plea or any other aspect of her

conviction. *Id.* at 2-3 (citing *Guilty Plea* at 4). Finally, the Government emphasizes that, at the hearing to enter her guilty plea, Ms. Talmer orally confirmed her knowledge and understanding of the contents of her plea agreement and the prosecution version. *Id.* at 3 (citing *Tr. of Proc.* at 14:5-15:22, 18:1-20:6, 21:20-23:25, 33:12-34:19, 36:18-38:22, 40:1-42:22 (ECF No. 32) (*Sentencing Tr.*)).[7]

The Government calls it "axiomatic" that the terms of an indictment cannot be altered so as to charge a defendant with a different crime than the one returned by the grand jury, *id.* (citing *United States v. Katana*, 93 F.4th 521, 530 (1st Cir. 2024)), and asserts Ms. Talmer has failed to explain "why her request . . . does not run afoul of the general prohibition against altering indictments." *Id.* The Government continues that "[a] guilty plea waives all non-jurisdictional challenges to an indictment." *Id.* at 3-4 (citing *United States v. Burghardt*, 939 F.3d 397, 402 (1st Cir. 2019) (alteration made by the Government)). The Government insists Ms. Talmer's guilty plea satisfied all of the factual and legal elements to sustain a final judgment and quotes the Supreme Court in *United States v. Broce*, 488 U.S. 563, 569 (1989), as explaining: "[j]ust as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that [s]he has committed two separate crimes." *Id.* at 4 (quoting *Broce*, 488 U.S. at 570) (second alteration made by Government).

---

[7]    In its response, the Government cites page numbers from the Sentencing Transcript to support its position. *Gov't's Amend Opp'n* at 3. After review, the Court revised these citations to include the particular lines of the Sentencing Transcript for specificity.

## B.    Discussion

The Court concludes Ms. Talmer's request to amend her charging documents is legally unavailing for several reasons.  First, in issuing an indictment, a grand jury is performing a constitutional function under the Fifth Amendment of the United States Constitution, and, once a grand jury has passed upon a charge, a court has extremely limited authority to amend it.  *See Katana*, 93 F.4th at 530; *United States v. McIvery*, 806 F.3d 645 (1st Cir. 2015) (explaining that a constructive amendment of an indictment implicates both a defendant's Fifth Amendment right to indictment by a grand jury, the Sixth Amendment right to prevent re-prosecution of the same offense, and a defendant's Sixth Amendment right to be informed of the charge).  Here, Ms. Talmer is seeking to amend the indictment to narrow the charge, removing the forty plus drug quantity, and thereby reducing the statutory penalty.  *Compare* 21 U.S.C. § 841(b)1)(B), *with* 21 U.S.C. § 841(b)(1)(C).  To be clear, there is some authority that a court may narrow an indictment without rendering it void.  *United States v. Mubayyid*, 658 F.3d 35, 50 (1st Cir. 2011) (concluding the Fifth Amendment was not violated where the change "added nothing new to the grand jury's indictment and constituted no broadening") (quoting *United States v. Miller*, 471 U.S. 130, 145 (1985)).

However, even if it were theoretically possible to grant a motion to amend over the objection of the government on a post-conviction motion, when Ms. Talmer entered her guilty plea to the indictment on February 3, 2021, she waived the right to challenge the facts underlying the forty-gram drug quantity in the indictment.  In

her plea agreement, Ms. Talmer agreed to a prosecution version of the indicted offense that stated:

<u>Count One of the Indictment</u>

A.  On June 11, 2020, law enforcement officers stopped a vehicle occupied by Defendant and John Southard in Portland, Maine.

B.  An ensuing search of the vehicle resulted in the seizure of a substance consistent in appearance with fentanyl.

C.  Defendant and John Southard jointly possessed the seized substance and intended to distribute it.

D.  A laboratory tested the seized substance and confirmed the presence of fentanyl.  The net weight exceeded 40 grams.

*Agreement to Plead Guilty (With Stips., Appeal Waiver, Cares Act Waiver, and Version of the Offense)* (ECF No. 65).  At the time of her guilty plea, Judge Singal clearly informed Ms. Talmer that the indictment had charged her with possession of forty grams or more of fentanyl.  *Tr. of Proc.* 34:4-8 (ECF No. 130) (THE COURT: Ms. Talmer, you're charged in a one-count indictment with possession with intent to distribute 40 grams or more of fentanyl in violation of federal law.  Do you understand the charge?  THE DEFENDANT: Yes, sir.").  Judge Singal also asked her whether she had reviewed the prosecution version of the offense, which contained the same specific allegation that she possessed at least forty grams of fentanyl, and whether she understood it.  *Id.* at 38:15-19.  Ms. Talmer replied, "Yes," to both questions.  *Id.* at 38:15-19.  Judge Singal asked Ms. Talmer whether the prosecution version was "true to your personal knowledge."  *Id.* 38:20-21.  Ms. Talmer replied, "Yes, it is sir." *Id.* at 38:22.

12

In responding to Judge Singal's questions, Ms. Talmer was not being asked questions of law, but rather whether the facts about what she herself had done were true. She represented to Judge Singal that the facts, including the allegation that she possessed more than forty grams of fentanyl, were in fact true. It is a well-established principle of law that a defendant's "declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Varela-Rivera*, 551 Fed. Appx. 583, 587 (1st Cir. 2014); *United States v. Padilla-Galarza*, 351 F.3d 594, 598 (1st Cir. 2003) ("Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea"); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (stating that the court will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so).

Here, in addition to making a factual argument contrary to her own admissions, Ms. Talmer implies that her defense counsel failed to inform her of consequences under the FSA. *Pet'r's Mot. to Amend* at 1-2. In light of its obligation to construe pro se filings liberally, *see Gakuba*, 2024 U.S. App. LEXIS 18703, at *1 (citing *Erickson*, 551 U.S. at 94), the Court considers whether there is legal merit to her claim that there is a statutory distinction between pure fentanyl and a mixture containing fentanyl. The text of the FSA belies any such distinction; in a section listing crimes ineligible for FSA relief, subsection (lxvi) mirrors verbatim the language of 21 U.S.C. § 841(b)(1)(B)(vi), the crime to which Ms. Talmer pleaded guilty:

(D) Ineligible prisoners. A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law:

. . . .

(lxvi) Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. [§] 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. [§] 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof.

18 U.S.C. § 3632(d)(4)(D)(lxvi) (emphasis added by the Court); *compare with* 21 U.S.C. § 841(b)(1)(B)(vi) ("In the case of a violation of subsection (a) of this section involving— . . . (vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- 1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N- 1-(2-phenylethyl)-4-piperidinyl] propanamide") (emphasis added by the Court). Based on the plain language of the FSA, no distinction exists between pure fentanyl and a mixture containing a trace amount of fentanyl for purposes of the FSA; both are ineligible for FSA relief.

The Court concludes Ms. Talmer's motion to change the language of her charging documents is without merit and dismisses the same.

## III. MOTIONS FOR SENTENCE REDUCTION

As previously described, Ms. Talmer has filed three motions seeking sentence reduction. *See Pet'r's First Mot.*; *Pet'r's Second Mot.*; *Pet'r's Third Mot.* The Government has opposed each of Ms. Talmer's motions. *See Gov't's First Opp'n*;

*Gov't's Second Opp'n*; *Gov't's Third Opp'n*. These motions sequences raise duplicative bases for relief and are reviewed pursuant to the same judicial standard; thus, the Court will address these three motions and their progeny jointly within this subsection.

### A.    The Parties' Positions

#### 1.    The First Motion for Sentence Reduction

##### a.    Ms. Talmer's December 29, 2023 Motion for Compassionate Release

On December 29, 2023, Ms. Talmer moved the Court for a grant of compassionate release. *Pet'r's First Mot.* First, Ms. Talmer reiterates her argument regarding her FSA eligibility based on the distinction between pure fentanyl and a mixture containing fentanyl; she explains that she had previously been informed she would be eligible for the FSA "but when [she] came here to [FCI] Danbury the[y] changed it in the computer." *Id.* at 1-2. She claims that "[she] worked very hard to earn that year of FSA and to have it taken away is unfair." *Id.* at 2. Ms. Talmer also attaches "papers for [h]ard[]ship credits." *Id.*; *see also id.*, Attach. 3, *FSA Time Credit Assessment* (ECF No. 47-3). After noting she is "waiting on [her] denial from the warden for [her] compassionate release," *id.* at 1, Ms. Talmer also informs the Court that her mother has been hospitalized and that "on the very small chance she makes it[,] she will never walk, talk, [or] go to the bathroom on her own." *Id.* at 2.

##### b.    The Government's January 18, 2024 Response in Opposition to Motion for Compassionate Release

The Government opposed Ms. Talmer's motion on January 18, 2024. *Gov't's First Opp'n.* After noting Ms. Talmer's concern for her ailing mother and complaint

that the federal Bureau of Prisons (BOP) "mistakenly deemed her ineligible to earn time credits under the [FSA]," the Government asks the Court to dismiss her request on procedural and substantive grounds.  *Id.* at 1.

First, the Government asserts it is black letter law that "a prisoner-initiated motion for compassionate release may be made only after the prisoner has exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [her] behalf or after thirty days have elapsed from the relevant facility's receipt of such request."  *Id.* at 6 (quoting *United States v. Quirós-Morales*, 83 F.4th 79, 84 (1st Cir. 2023); *see also* 18 U.S.C. § 3582(c)(1)(A).  Calling this requirement "motion-specific," the Government insists "a prisoner must demonstrate renewed compliance with the requirement with each successive compassionate release motion [s]he files."  *Id.* (quoting *United States v. Cain*, No. 1:16-cr-00103-JAW, 2021 U.S. Dist. LEXIS 20672, at *16 (D. Me. Feb. 3, 2021)).  The Government contends Ms. Talmer failed to exhaust her administrative remedies prior to filing her motion, which it claims she herself acknowledged in her motion by stating: "I'm also waiting on my denial from the Warden for my compassionate release."  *Id.* at 6-7 (quoting *Pet'r's First Mot.* at 1).  As further evidence, the Government attaches two administrative requests from Ms. Talmer to BOP asking it to file for compassionate release on her behalf; Ms. Talmer submitted her first motion to the Court on December 29, 2023, and her administrative requests were received by the Warden on December 20, 2023 and January 3, 2024. Ms. Talmer thus did not wait the requisite thirty days before filing of her motion with the Court.  *Id.* at 7 (citing *id.*, Attach. 1, *Inmate Request to Staff* (ECF No. 178-1); *id.*,

Attach. 2, *Letter to BOP* (ECF No. 178-2).  Thus, the Government says, "the earliest date on which Talmer could have moved for compassionate release is January 19, 2024." *Id.*

In the event the Court finds Ms. Talmer exhausted her administrative remedies, the Government alternatively protests the merits of her motion for sentence reduction.  The Government described three requirements that Ms. Talmer must satisfy to warrant a sentence reduction: "(1) that extraordinary and compelling reasons warrant a sentence reduction; (2) that the reduction is consistent with the Sentencing Commission's policy statement; and (3) that the 18 U.S.C. § 3553(a) factors weigh in favor of a reduced sentence." *Id.* (citing *Quirós-Morales*, 83 F.4th at 84).  The Government argues Ms. Talmer "has not made (and cannot make) any of these three showing." *Id.*

First, the Government posits Ms. Talmer has failed to show any extraordinary and compelling reasons justifying her release; while expressing its sympathy for her mother's condition, the Government notes that her mother had passed away in the interim before its response[8] and claims her passing "obviates the question of whether a prisoner's desire to care for and spend time with a sick parent is sufficiently extraordinary and compelling to warrant compassionate release." *Id.* at 8.

The Government also disputes Ms. Talmer's complaint regarding her FSA eligibility, directing the Court to one of its prior orders in which it explained time

---

[8]    In its opposition, the Government notes that "[i]n her subsequently filed *pro se* motion to reduce sentence [filed on January 12, 2024], Talmer reported that her mother died on December 20, 2023." *Gov't's First Opp'n* at 1 n.1. (citing *Pet'r's Second Mot.*); *see also, supra,* Section III.2.a.

served credits fall within the authority of the BOP and the vehicle to challenge the BOP's calculations is a habeas petition under 28 U.S.C. § 2241. *Id.* (citing *Order on Mots. for Compassionate Release & Credit for Time Served*). The Government argues the calculation of FSA credits similarly falls within the authority of BOP, such that she improperly raises this issue in her motion for compassionate release. *Id.* at 9. Finally, the Government notes that, even if brought properly, the BOP correctly applies the FSA to deny Ms. Talmer's FSA eligibility based on her conviction for possession with intent to distribute over 40 grams of a mixture containing a detectable amount of fentanyl. *Id.* (citing 18 U.S.C. § 3632(d)(4)(D)(lxvi)). None of Ms. Talmer's reasons, "[w]hether they are considered separately or collectively," satisfy the standard of extraordinary and compelling, the Government concludes. *Id.*

Turning to consistency with the United States Sentencing Commission's policy statements, the Government avers Ms. Talmer has failed to establish the existence of any of the circumstances identified by the Commission as extraordinary and compelling pursuant to U.S.S.G. § 1B1.13(b):

> (1) the defendant suffering from certain medical conditions; (2) the defendant's advanced age; (3) the defendant's family circumstances; (4) the defendant having been the victim of sexual or physical abuse by or at the direction of a correctional officer; (5) a catch-all provision where any other reason or combination of reasons similar in gravity to those described in (1) through (4); and (6) the defendant having received an unusually long sentence and having already served at least 10 years' imprisonment.

*Id.* at 9-10 (citing U.S.S.G. § 1B1.13(b)(1)-(6)).

Finally, the Government contends the 18 U.S.C. § 3553(a) factors weigh against a grant of sentence reduction in Ms. Talmer's case. *Id.* at 10. The

18

Government points out that, at sentencing, the Court admonished Ms. Talmer for her "complete disregard for the rules of society" and noted she committed additional offenses "during the period she was either on bail or probation or when there were outstanding arrest warrants for her." *Id.* (quoting *Sentencing Tr.* at 25:1-26:4). The Court further noted the circumstances of Ms. Talmer's second arrest, which included a car chase on a four-lane highway, "involved a series of events that easily could have caused -- substantial injury or even death to bystanders, as well as the police." *Id.* (citing *Sentencing Tr.* at 26:14-16) (citation amended). The Court also discussed Ms. Talmer's criminal record involving drug distribution offenses. *Id.* at 10-11 (citing *Sentencing Tr.* at 27:1-10) (citation amended).

The Government insists the Court's explanation "is no less compelling today than when it was originally imposed" and tells the Court that granting a sentence reduction "does not adequately account for the nature and circumstances of her offense conduct and her history and characteristics," "does not reflect the seriousness of her offenses, promote respect for the law, or provide just punishment for her crimes," and "does not afford adequate deterrence to future criminal conduct." *Id.* at 11 (citing 18 U.S.C. § 3553(a)(1), (2)).

## 2.    The Second Motion for Sentence Reduction

### a.    Ms. Talmer's January 12, 2024 Motion for Sentence Reduction

On January 12, 2024, Ms. Talmer again moved the Court to reduce her sentence. *Pet'r's Second Mot.* In her second motion, Ms. Talmer realleges her FSA eligibility was changed based on "the wording in [her] paperwork." *Id.* at 1. She also

notes she passed her GED test and indicates her desire to be a substance abuse counselor. *Id.* at 2.

Ms. Talmer informs the Court of her attempts to rebuild a relationship with her youngest daughter and that her mother passed away on December 20, 2023. *Id.* at 2-3. She further restates numerous grounds asserted in her first motion, including that "[s]ending [her] to prison was the best thing that ever happened to [her]" because it gave her an opportunity to get clean and sober, *id.* at 2, and that she participated in the RDAP program while in prison. *Id.* at 3. She asks the Court to release her to the Esther Residence, a sober living facility in Saco, Maine. *Id.*

> **b.    The Government's February 2, 2024 Response in Opposition to Motions for Hardship Credit and to Motion for Sentence Reduction**

The Government opposed Ms. Talmer's motion on February 2, 2024. *Gov't's Second Opp'n.* While this filing also responds to Ms. Talmer's motions for hardship credit*, see, supra,* Section IV, in relevant part to this motion sequence the Government avers Ms. Talmer failed to demonstrate administrative exhaustion prior to bringing her claim, and further that the Court lacks jurisdiction to adjudicate Ms. Talmer's FSA credit claim. *Id.* at 3-4.

First, the Government avers "there is no evidence in the record or in Talmer's motion[] that she brought her challenges concerning the computation of FSA credits . . . to proper prison officials and then exhausted her administrative remedies within the BOP prior to seeking relief with the Court." *Id.* at 4. Without such evidence, the Government says "it is appropriate to dismiss her motions without prejudice." *Id.*

Second, the Government echoes its prior position that calculating credits is within the authority of the BOP and that any challenge to its calculations must be brought as a habeas petition pursuant to 28 U.S.C. § 2241 in the district of her confinement, not the district of her sentencing. *Id.* at 4-5 (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *McKinney v. United States*, No. 1:18-cr-00084-JAW-3, 2022 U.S. Dist. LEXIS 100068 (D. Me. June 6, 2022); *United States v. Williams*, No. 2:15-cr-00069-JDL, 2023 U.S. Dist. LEXIS 219596 (D. Me. Dec. 11, 2023)).

The Government concludes by requesting the Court dismiss Ms. Talmer's motion to reduce sentence. *Id.* at 5.

### c.  April 15, 2024, Attachments Supporting Ms. Talmer's Second Motion[9]

On April 15, 2024, Ms. Talmer submitted additional documentation in support of her motion. *See Pet'r's Second Mot. Attachs.*  Her submission begins with a letter reiterating her requests for relief.  She tells the Court "[she] ha[s] now exhausted all [her] remedies on getting [her] time credit for FSA," reporting that she spoke with the Warden of her facility and he advised her to write to her judge. *Id.* at 1.  She again asserts she is incarcerated "for 40 grams or more of powder fentanyl when that's not what [she] had" and argues the presence of fentanyl "should have been

---

[9]    In 2:20-cr-00084-JAW-02, the Clerk of Court designated these filings as additional attachments to Ms. Talmer's motion for hardship credit, while in 2:21-cr-00004-JAW-01 an identical set of filings was designated as additional attachments to Ms. Talmer's second motion for sentence reduction.  In the interest of liberally construing a pro se defendant's filings, *Gakuba*, 2024 U.S. App. LEXIS 18703, at *1 (citing *Erickson*, 551 U.S. at 94), the Court considers the substantive points of these additional attachments in the context of the Defendant's pending motion for compassionate release.

another code." *Id.* She refers the Court to *Paxson v. United States*,[10] which she describes as "the same case but she had guns and is FSA eligible." *Id.* She again asks the Court to "change [her] codes so [she] can get [her] FSA back to eligible" or to "reduce [her] sentence to 75 or 85 months." *Id.* at 2-3.

She also reiterates the significant personal losses she has suffered while incarcerated and emphasizes her efforts to improve herself, including substance abuse and educational programs. *Id.* at 1-2. She tells the Court she "thought [she] was only getting 60 months" and informs the Court of her plans to live at Esther Residents sober living facility upon her release. *Id.* at 3. She adds that her daughter is having a second child and is suffering medical issues related to her pregnancy, asking the Court to permit her to assist her family. *Id.* at 3-4. She also requests a court date and appointment of counsel. *Id.* at 4.

Ms. Talmer further submits that her medical needs have not been met during the period of her incarceration. *Id.* at 5. She notes that she "had cancer while [she] was waiting to be sentenced" and asserts "not once has anyone brought [her] to get [her] check[]ups." *Id.* She also tells the Court she "was supposed to have back surgery and [she] still ha[s] not been seen for [her] back at all." *Id.* at 5. She again notes her "open PREA case" against a BOP official and tells the Court that despite "all of the struggles [she] has faced while in BOP," she "still made the best of [her] sentence doing the right things." *Id.* at 6.

---

[10]    Ms. Talmer directs the Court to "Amanda Paxon vs. United States also from Maine." *Id.* at 1. Based on the Court's research, the cited case appears to be *United States v. Paxson*, No. 2:20-cr-00083-NT, 2023 U.S. Dist. LEXIS 167941 (D. Me. Sep. 21, 2023).

Ms. Talmer attaches several documents to her supplementary filing. First, she attaches an email from counsel and copies of several administrative requests for relief. *Pet'r's Second Mot. Attachs.*, Attach. 1, *Email from K. Gorman & Admin. Requests*, 2:20-cr-00084-JAW-02 (ECF No. 183-1); 2:21-cr-00004-JAW-01 (ECF No. 54-1). In administrative requests submitted on October 19, 2023 and October 20, 2023, she raises the FSA credit issue; the BOP denied her administrative request, citing her ineligibility for FSA credits, on November 14, 2023. *Id.* at 2-4. She also attaches an undated document, purportedly from BOP, denying her FSA eligibility based on her prior conviction. *Id.* at 5. She further submits an administrative remedy appeal, filed with BOP on April 1, 2024, again raising her concern regarding FSA credit eligibility and telling BOP that "several women here have FSA & have her[oi]n with fentanyl." *Id* at 6. Finally, Ms. Talmer attaches another response from the Warden of FCI Danbury, sent on March 9, 2024, denying her request for FSA credits as ineligible and informing her that her conviction is "a disqualifying offense regardless of any leadership role or other enhancements." *Id.* at 7.

Next, Ms. Talmer submits documents which she avers demonstrate the truth of her claims. *Pet'r's Second Mot. Attachs.*, Attach. 2, *Papers Showing Proof*, 2:20-cr-00084-JAW-02 (ECF No. 183-2); 2:21-cr-00004-JAW-01 (ECF No. 54-2). She first attaches a letter describing the purpose of the subsequent documents; to prove: (1) that she thought she was only going to receive a sixty month sentence; (2) that she possessed a mixture containing fentanyl and tried to have the heroin and fentanyl separated "to show it was 90% her[oi]n"; (3) the record of male abuse she has suffered

23

in her life and since her incarceration; and (4) her assertions regarding her cancer and the Esther House. *Id.* at 1. She also includes a version of the Government's Consolidated Response in Opposition to Motions to Reduce Sentence and Motions for Hardship Credit, in which she has highlighted and underlined sections referring to her possession of "a mixture or substance containing a detectable amount of fentanyl." *Pet'r's Second Mot. Attachs.*, Attach. 3, *Pet'r's Excerpts* at 1-2, 2:20-cr-00084-JAW-02 (ECF No. 183-3); 2:21-cr-00004-JAW-01 (ECF No. 54-3). She continues by attaching excerpts from the Defendant's memorandum in aid of sentencing, in which she has highlighted various facts regarding her difficult and traumatic personal history and her request that the Court sentence her to sixty months. *Id.* at 3-8. She next attaches portions of the Defendant's objections to Presentence Report in which she has highlighted lines objecting to the drug quantities because "she has not yet been provided copies of the lab results which supports these quantities." *Id.* at 9-10. Next, she attaches an excerpt from Judge Singal's order dismissing her first request for compassionate release, highlighting the statement that "Talmer is statutorily ineligible to receive time credits under the FSA because she was convicted of possessing with intent to distribute 40 grams or more of a mixture containing or substance containing a detectable amount of fentanyl." *Id.* at 11-12. Finally, Ms. Talmer attaches an excerpt from her guilty plea in which she has highlighted a portion of the Appeal Waivers section in which she waived the right to appeal "[a] sentence of imprisonment that does not exceed sixty months." *Id.* at 13-14.

24

### 3.    The Third Motion for Sentence Reduction

#### a.    Ms. Talmer's May 20, 2024 Motion for Sentence Reduction & Motion for FSA Credits and to Recode Case

On May 20, 2024, Ms. Talmer filed another motion asking the Court to reduce her sentence, as well as an attached motion for FSA credit and for the Court to recode her case.  *See Pet'r's Third Mot.*; *Pet'r's FSA Credit Mot.*

In her motion to reduce sentence, Ms. Talmer tells the Court that an MRI has revealed she requires back surgery and that doctors have indicated she also requires surgery on her right foot.  *Pet'r's Third Mot.* at 1.  She asks the Court to grant her third motion for sentence reduction so that she can receive the needed surgeries.  *Id.* She avers she would stay at the Esther Residents sober living facility if the Court grants her request.  *Id.*  Ms. Talmer describes herself as "not the same person that came to prison four years ago," pointing out that she enrolled in the RDAP program, completed her GED, and has lost a mother and brother while incarcerated.  *Id.* at 2. She asks the Court to grant her third motion to reduce sentence so that she can "get home to be a mom [and] [g]randmother."  *Id.*

Attached as a separate document, Ms. Talmer reiterates her request that the Court grant her FSA credits or recode her case, emphasizing that she completed certain First Step credits before being deemed ineligible and that "[she] didn't have powder fentanyl."  *Id.*  She avers she has seen "other women[']s paper[]work that have cases like mine and they get FSA."  *Pet'r's FSA Credit Mot.* at 1.

####    b.    June 4, 2024 Attachments Supporting Ms. Talmer's Third Motion

On June 4, 2024, Ms. Talmer filed a series of documents supplementing her motion. *Pet'r's Third Mot. First Attachs.* Ms. Talmer prefaces her attachments with a letter stating she spoke with the Warden of FCI Danbury, who informed her "he would be den[]ying [her] compassionat[e] release and told [her] [she] should write [to the Court]." *Id.* at 1. She explains that she is attaching medical records to inform the Court "how much worse [her] back . . . is getting" and that she suffers from "so much pain daily that some days [she] can bar[el]y walk." *Id.* She tells the Court that her back is worsening and asks for release so she can undergo surgery. *Id.*

In a separate attachment, Ms. Talmer writes a letter dated May 21, 2024, in which she informs the Court that since being incarcerated, she "was diagnosed with skin cancer and had several surger[ie]s to remove the cancer." *Pet'r's Third Mot. First Attachs.,* Attach. 1, *Letter to the Court*, 2:20-cr-00084-JAW-02 (ECF No. 185-1); 2:21-cr-00004-JAW-01 (ECF No. 57-1). She claims that "[she] ha[s] not had any check[]ups at all" and reasserts that she suffers from severe neck and back pain. *Id.* She additionally tells the Court she consulted a doctor "because of [her] right foot," which she avers she "can barely walk on." *Id.* Ms. Talmer reports she "was diagnosed with plantiophasicoitious and was given a steroid shot," but claims the administering doctor said "he didn't think it would take and that [she] should have surgery if the shot didn't help." *Id.* She directs the Court to *United States v. Sayegh*, No. 20-cr-613 (JSR), 2023 U.S. Dist. LEXIS 226253 (S.D.N.Y. Dec. 20, 2023), in which the District Court for the Southern District of New York granted an inmate's motion for

compassionate release based on "severe back pain and worsening medical issues in prison." *Id*. Ms. Talmer also informs the Court that she has learned from BOP programming, that she wants to be released to support her family, and that she has goals of becoming a drug treatment specialist. *Id*. at 2.

She further tells the Court of the deplorable living conditions during her time incarcerated in Philadelphia, which she describes as "Mice and cockroaches everywhere. Toilet water overflowing with human f[]eces all over. Being locked in my cell for days where at some points not even being let out to shower for days at a time." *Id*. at 3. She reminds the Court of the PREA case she filed against a BOP official based on unwanted sexual advances and notes her previous trauma stemming from abuse suffered at the hands of the other male figures in her life. *Id*. She also notes an open court case "trying to get to see [her daughter]." *Id*. at 4. Finally, she again posits that her FSA credit was unfairly eliminated and that other inmates with analogous cases remain eligible for the FSA credit program, directing the Court once more to *United States v. Paxson*[11]. *Id*.

Ms. Talmer attaches a series of her medical records, which she indicates demonstrates the degenerative nature of her back injury.[12] The first record of a

---

[11]    Ms. Talmer's letter refers to "a case USA v. Amanda Paxel from Maine also had her[oi]n that tested positive for presence of fentanyl." *Id*. at 4. Again, the Court understands her citation to refer to *United States v. Paxson*, No. 2:20-cr-00083-NT, 2023 U.S. Dist. LEXIS 167941 (D. Me. Sep. 21, 2023).

[12]    On June 6, 2024, the Court notified Ms. Talmer that her additional attachments "contain[] personal identifiers in violation of Fed. R. Civ. P. 5.2 or Fed. R. Crim. P. 49.1," and that "[t]he Court has preliminarily sealed" the documents. *Order* 2:20-cr-00084-JAW-02 (ECF No. 186); 2:21-cr-00004-JAW-01 (ECF No. 58). The Court informed her that she "may remedy this violation by filing redacted versions of the documents . . . along with[] a Motion to Seal" and set a deadline for filing the same of

27

clinical evaluation comes from May 2018, *Pet'r's Third Mot. First Attachs.,* Attach. 4, *Me. Med. Partners Rep. 5/1/2018*, 2:20-cr-00084-JAW-02 (ECF No. 185-4); 2:21-cr-00004-JAW-01 (ECF No. 57-4), followed by a revised evaluation reports from February and March 2019, *Pet'r's Third Mot. First Attachs.,* Attach. 5, *Elation EMR 3/8/2019*, 2:20-cr-00084-JAW-02 (ECF No. 185-5); 2:21-cr-00004-JAW-01 (ECF No. 57-5); *Pet'r's Third Mot. First Attachs.,* Attach. 6, *Elation EMR 2/8/2019*, 2:20-cr-00084-JAW-02 (ECF No. 185-6); 2:21-cr-00004-JAW-01 (ECF No. 57-6); *Pet'r's Third Mot. First Attachs.,* Attach. 7, *Me. Med. Partners Rep. 2/8/2019*, 2:20-cr-00084-JAW-02 (ECF No. 185-7); 2:21-cr-00004-JAW-01 (ECF No. 57-7).  She then includes a more recent set of diagnostic imaging records from April 2024. *Pet'r's Third Mot. First Attachs.,* Attach. 2, *Diagnostic Imaging p. 1.* 2:20-cr-00084-JAW-02 (ECF No. 185-2); 2:21-cr-00004-JAW-01 (ECF No. 57-2); *Pet'r's Third Mot. First Attachs.,* Attach. 3, *Diagnostic Imaging p. 2*, 2:20-cr-00084-JAW-02 (ECF No. 185-3); 2:21-cr-00004-JAW-01 (ECF No. 57-3).

---

June 20, 2024.  *Id.*  Ms. Talmer neither responded nor filed a redacted version of the documents or motion to seal.

Nonetheless, the Court takes seriously its obligation to follow the First Circuit's directive in *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), regarding the right of public access to "judicial records."  The *Kravetz* Court instructs that there is a presumption that the common law right of public access applies to "judicial records," which include "materials on which a court relies in determining the litigants' substantive rights."  *Id.* at 54, 56 (quoting *In re Providence J.*, 293 F.3d 1, 9-10 (1st Cir. 2002)).  The *Kravetz* Court discussed the question of medical information specifically and distinguished between medical or psychological information that is "peripheral" and would only serve to "gratify public spite or promote public scandal" and information that is "necessary to the public's appreciation of the sentence imposed."  *Id.* at 63.

In its discussion of Ms. Talmer's medical information that she shared in support of his motion for compassionate release, as well as its discussion of here familial circumstances and personal history, the Court discusses only the information that is "necessary to the public's appreciation of the sentence imposed."  *See id.*  It strives not to include personally identifying information or medical history or conditions only "peripheral" to the present order.  *See id.*

### c.    The Government's June 10, 2024 Response in Opposition to Motion for Sentence Reduction

The Government opposed Ms. Talmer's third motion for sentence reduction. *See Gov't's Third Opp'n.* The Government reasserts its prior position that Ms. Talmer failed to exhaust her administrative remedies within the BOP, and further that the Court lacks jurisdiction to adjudicate her request for FSA credits. *Id.* at 1-2. The Government contends Ms. Talmer did not raise her need for surgical care or to spend time with family to the BOP, nor did she complain regarding the computation of FSA credits and the coding of her case to the proper prison officials prior to filing her motion directly with the Court. *Id.* at 4. As such, the Government argues she has failed to exhaust her administrative remedies and the Court should dismiss her motions on that basis alone. *Id.*

The Government also challenges the Court's jurisdiction over the Defendant's request for FSA credit, characterizing this claim as within "the execution of her sentence" and arguing, as such, the motion must be filed as a habeas petition within her district of confinement. *Id.* at 5 (citing *McKinney*, 2022 U.S. Dist. LEXIS 100068, at *3; *Williams*, 2023 U.S. Dist. LEXIS 219596, at *2). In a footnote the Government also maintains its substantive challenge to Mr. Talmer's motions, writing:

> even assuming for the sake of argument that Talmer had exhausted her administrative remedies properly, the Government further argues that Talmer has not shown (and cannot show): (1) that extraordinary and compelling reasons warrant a sentence reduction; (2) that the reduction is consistent with the Sentencing Commission's policy statement; and (3) that the 18 U.S.C. § 3553(a) factors weigh in favor of a reduced sentence.

*Id.* at 1 n.1.

### d.    December 5, 2024 Attachments Supporting Ms. Talmer's Third Motion

Ms. Talmer submitted a second set of additional attachments in support of her motion for sentence reduction and request for FSA credits and for her case to be recoded on December 5, 2024. *Pet'r's Third Mot. Second Attachs.* She again submits a letter asserting she has been improperly designated as ineligible for FSA credits and argues the drugs for which she was convicted was "her[oin] with a little amount of fentanyl," as opposed to entirely fentanyl. *Id.* at 1. She claims she would not have knowingly purchased fentanyl and laboratory testing did not separate the amount of fentanyl within the heroin, such that the amount of pure fentanyl she possessed remains unknown. *Id.* at 1-3. She also again submits that similarly situated defendants have been awarded FSA credits and asserts "after looking into the BOP law library and looking at other cases just like mine they are ALL allowed FSA time credits," though she does not provide any citations for these cases. *Id.* at 3-4. Ms. Talmer further contends that she has exhausted her administrative remedies. *Id.* at 2.

In support of her letter, Ms. Talmer submits a record of her appeal to the National Inmate Appeals, *id.*, Attach. 1, *Admin. Remedy*, 2:20-cr-00084-JAW-02 (ECF No. 190-1); 2:21-cr-00004-JAW-01 (ECF No. 62-1), as well as annotated versions of the Government's consolidated response in opposition to her motions for appointment of counsel and for release to home confinement or rehabilitation and of

BOP's sentence monitoring report for her. *Id.*, Attach. 2, *Sentence Monitoring*, 2:20-cr-00084-JAW-02 (ECF No. 190-2); 2:21-cr-00004-JAW-01 (ECF No. 62-2).

### B.    Legal Discussion

The Court's consideration of Ms. Talmer's arguments proceeds in several discrete steps.  As a preliminary matter, the Court must first establish that it possesses the appropriate legal jurisdiction to even consider Ms. Talmer's claim. Next, should the Court have jurisdiction, defendants filing motions for compassionate release directly must first demonstrate that they have exhausted their administrative remedies; pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may only modify a term of imprisonment where a defendant has fully exhausted her rights of administrative appeal or thirty days have lapsed from when the defendant requested the warden of her facility to file a request for sentence reduction on her behalf. Finally, where a defendant has properly exhausted her administrative remedies prior to filing her motion directly, the Court must then consider whether her arguments satisfy the statutory standard for a grant of compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The Court considers Ms. Talmer's motions against each of these requirements in turn.

#### 1.    Jurisdiction

##### a.    Legal Standard

"'Federal courts are courts of limited jurisdiction.'  Thus, jurisdictional boundaries must be scrupulously observed." *Calvary Chapel of Bangor v. Mills*, 984 F.3d 21, 30 (1st Cir. 2020) (quoting *Rhode Island v. EPA*, 378 F.3d 19, 22 (1st Cir. 2004)).  In *McKinney*, this Court considered a habeas petition pursuant to 28 U.S.C.

§ 2241 in which a defendant challenged the BOP's calculation of his good time deductions. *McKinney*, 2022 U.S. Dist. LEXIS 100068, at *2. In that case, the Court affirmed a United States Magistrate Judge's recommended decision; after detailed analysis of analogous Third Circuit caselaw, the Magistrate Judge concluded that the calculations regarding good time credit fell within the authority of the BOP and such challenges must be brought as habeas petitions pursuant to 28 U.S.C. § 2241 in the district of their confinement. *Id.* at *3 ("While a petitioner is free to challenge the calculation through a § 2241 motion, such petitions challenging the execution of a federal sentence generally must be filed in the district of confinement") (internal citations and quotation marks omitted). After review, this Court determined the Magistrate Judge's recommended decision was "substantively correct," "adopt[ed] and affirm[ed] the decision in its entirety," and dismissed the petition. *Id.* at *3-8; *see also Williams*, 2023 U.S. Dist. LEXIS 219596, at *4 n.1 ("To the extent that [the defendant] seeks to challenge the Bureau of Prisons' calculation or application of good time credits, it might be appropriate to raise that issue in a motion under 28 U.S.C. § 2241 [] in the district where [he] is incarcerated") (citing *McKinney*, 2022 U.S. Dist. LEXIS 100068).

### b.    Discussion

Here, the Court concludes Ms. Talmer's claims regarding her right to FSA credits follow in the line of *McKinney* and *Williams*; the Court will not break from these prior decisions. As in *McKinney*, Ms. Talmer predicates her challenge on allegations that she "[has] not received any good time credits per [the] First Step Act." *McKinney*, 2022 U.S. Dist. LEXIS 100068, at *1. Finding the *McKinney* Court's and

the Magistrate Judge's analysis compelling, the Court sees two reasons that it lacks jurisdiction to consider Ms. Talmer's FSA credit claims: first, Ms. Talmer brings her claims not as habeas petitions pursuant to 28 U.S.C. § 2241, but as requests for compassionate release, and second, Ms. Talmer is not confined within the District of Maine.

Beginning with the latter, as the Government points out, Ms. Talmer is incarcerated at FCI Danbury, a facility located in the state of Connecticut. *See Gov't's Third Opp'n* at 3 n.3; *see also* Federal BOP Inmate Locator, https://www.bop.gov/inmateloc// (last visited Nov. 16, 2024). As in *McKinney*, "[a]lthough Petitioner was sentenced in the District of Maine, Petitioner does not appear to have been in custody within the District of Maine when [s]he filed the petition." *McKinney*, 2022 U.S. Dist. LEXIS 100068, at *3. Second, the District of Maine has allowed claims disputing First Step Act credits as habeas petitions pursuant to 28 U.S.C. § 2241; to permit the same claim to be brought as a compassionate release claim within this district would create a risk of forum shopping and inconsistent rulings. *See Rumsfeld*, 542 U.S. at 447 (rejecting an attempt to file a habeas petition in another judicial district because "[t]he result would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation 137 years ago").

Ms. Talmer repeatedly directs the Court to *United States v. Paxson*, 2023 U.S. Dist. LEXIS 167941, which she argues is analogous to her case and resulted in the

Court awarding the petitioner with FSA credits.  *See, e.g.*, *Pet'r's Third Mot. First Attachs.* at 2.  Based on a review of the facts of *Paxson*, the Court agrees it is a factual analog.  However, the problem with Ms. Talmer's citation is that the *Paxson* Court did not reach the legal conclusion she suggests.  In *Paxson*, the Court first noted that "[t]he Government is correct that decisions regarding early release for participation in RDAP are within the discretion of the BOP," 2023 U.S. Dist. LEXIS 167941, at *2, before ruling that "after a sentence has been imposed, [the Court] ha[s] the authority to modify that sentence only in a few circumstances" and denying Ms. Paxson's requested sentence reduction based on RDAP credits because her request "ha[d] not shown that any of these special circumstances exist."  *Id.* at *3.

At bottom, the Court will not—and, indeed, cannot—assert jurisdiction where it does not properly exist.  The Court dismisses Ms. Talmer's claims relating to FSA credits without prejudice.

## 2.    Administrative Exhaustion

### a.    Legal Standard

In 18 U.S.C. § 3582(c)(1)(A), Congress plainly laid out the requirements for a defendant to file a motion for sentence reduction directly with the court, providing that a court may only modify a term of imprisonment where:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

34

*Id.*; *see also Quirós-Morales*, 83 F.4th at 84 ("a prisoner-initiated motion for compassionate release may be made only after the prisoner has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or after thirty days have elapsed from the relevant facility's receipt of such request").

This Court has previously held that "[s]uccessive compassionate release motions must independently satisfy the exhaustion requirement." *Cain*, 2021 U.S. Dist. LEXIS 20672, at *10-11 (collecting cases). As this Court explained in *Cain*: "[e]ven though [the defendant] made a similar request for release [months before], these factors may well have changed in the ensuing months and the statute contemplates that the Warden be given an opportunity to make an internal assessment based on then current conditions." *Id.* at *12-13. While motion-specific exhaustion is required, issue-specific exhaustion remains unresolved in this circuit. *See United States v. Gordon*, No. 1:19-cr-00007-JAW, 2023 U.S. Dist. LEXIS 223293, at *8-9 (D. Me. Dec. 15, 2023); *United States v. Waite*, No. 2:18-cr-00113-GZS, 2022 U.S. Dist. LEXIS 133073, at *5 (D. Me. Jul. 27, 2022) ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit"); *accord United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) ("The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty—but we need not resolve that question today").

Other circuit courts of appeal have resolved this issue. For example, the Seventh Circuit ruled in 2021 that to proceed with a motion for compassionate release in a district court, a defendant "is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *accord United States v. Gieswein*, 832 Fed. Appx. 576, 578 (10th Cir. 2021). Yet other circuit courts have disagreed, holding that § 3582(c)(1)(A) does not require issue exhaustion and the Supreme Court has not yet addressed the issue and concluded otherwise. *See, e.g., United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022), *cert. denied*, 144 S. Ct. 1007 (2024) (holding the "[d]istrict court erred when it concluded that it could not consider defendant's non-medical arguments with respect to his motion for compassionate release due because he did not raise them in request for compassionate release made to [BOP] because 18 U.S.C. § 3582(c)(1)(A) did not require issue exhaustion").

## b.    Discussion

The Government's administrative exhaustion claim is two-pronged: temporal and substantive. The Government raises some initial uncertainty regarding whether Ms. Talmer's first motion comports with the requirements of 18 U.S.C. § 3582(c)(1)(A). *See Gov't's First Opp'n* at 7 ("Talmer also failed to wait until 30 days had elapsed from Danbury FCI's receipt of her two most recent requests for compassionate release, which were received by Danbury FCI on December 20, 2023, and on January 2, 2024, before filing her second pro se motion for compassionate release with the Court") (citing *Inmate Request to Staff*; *Letter to BOP*).

36

Indeed, the timing of the administrative requests attached by the Government presents a problem: Ms. Talmer's December 29, 2023 and January 12, 2024 respective motions were each submitted to this Court less than thirty days after the administrative requests' dates of receipt by BOP officials on December 20, 2023 and January 3, 2024. *Compare Pet'r's First Mot.*; *Pet'r's Second Mot. with Inmate Request to Staff*; *Letter to BOP.* Thus, because Ms. Talmer failed to wait for "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," 18 U.S.C. § 3582(c)(1)(A), the Court dismisses her first two pending motions to reduce sentence on administrative exhaustion grounds.

Ms. Talmer's most recent motion to reduce sentence, filed on May 20, 2024, does not similarly violate the temporal requirements of 18 U.S.C. § 3582(c)(1)(A), as it was filed more than thirty days after she asked the warden of FCI Danbury to bring a motion for compassionate release on her behalf on December 20, 2023 and January 3, 2024.

However, the Government complains of a different procedural deficiency with regards to Ms. Talmer's third motion for early release; according to the Government, Ms. Talmer never asserted her claims to prison officials "concerning the need for a reduced sentence to pursue surgical care or spend time with family or the computation of FSA credits and the coding of her case to the proper prison officials," and thus she failed to exhaust her administrative remedies within BOP. *Pet'r's Third Mot.* at 4.

The Court concludes that the Government's description of the substantive disparity between Ms. Talmer's administrative requests and her third motion for sentence reduction is accurate. The administrative requests entered on the record both appear as attachments to the Government's opposition to Ms. Talmer's first motion and neither of these requests alerts BOP officials to the bases for relief subsequently asserted in her third motion to reduce sentence. In the request received by BOP on December 20, 2023, Ms. Talmer writes: "[m]y mother is in critical condition in the hospital and decisions are being made about her care. I am the only one who can care for her. I would like you to file for compassionate release." *Inmate Request to Staff.* In the request BOP received on January 3, 2024, Ms. Talmer's letter again only discussed "the failing health of [her] mother," noting that "she has been diagnosed with multiple sclerosis [and] spinal sclerosis," "has had 8-10 blood transfusions," "was recently admitted to the hospital for a stroke," and "many abscesses were discovered along her spine." *Letter to BOP* at 1. Ms. Talmer notes that her mother lived with the Defendant prior to her incarceration and informs the Court she "is confined to an electric wheelchair and cannot physically take care of herself." *Id.* at 2. She also explains that "[her] mother is divorced and has had no contact with my sister [] in 6 years." *Id.* As such, Ms. Talmer requested release out of "[her] belief that [her] mother is living in her last years" and "[her] wish to make her as comfortable as possible." *Id.*

The Court is sympathetic to the health conditions undergone by the Defendant's mother, including the effect they had on Ms. Talmer. However, as the

Defendant noted in her second motion, her mother passed away on December 20, 2023. *Pet'r's Second Mot.* at 2-3. Therefore, the Court finds the potential basis for early release to care for her mother mooted by her mother's unfortunate passing, a reality that Ms. Talmer appears to recognize by revising her bases for requested relief in her third motion. In her third motion, Ms. Talmer instead describes her own medical issues, noting her need for back and foot surgeries. *Pet'r's Third Mot.* As previewed by the Government's response, these concerns appear nowhere in her administrative requests for relief to BOP. *Compare Pet'r's Third Mot.*, *with Inmate Request to Staff*; *Letter to BOP*.

However, as noted earlier, the First Circuit has not resolved whether a defendant should be barred from proceeding with a motion for compassionate release if she failed to raise with the BOP the same issues she is presenting to the district court. *Waite*, 2022 U.S. Dist. LEXIS 133073, at *5 ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit"). As the First Circuit has not decided whether issue exhaustion is required in this circuit, the Court proceeds to consideration of the merits of Ms. Talmer's third motion for compassionate release. *See United States v. Doe*, No. 1:17-cr-00091-JAW-1, 2024 U.S. Dist. LEXIS 205398, at *20-21 (D. Me. Nov. 12, 2024) (addressing merits of the defendant's claim even though his compassionate release claim would have been barred if issue exhaustion applied in the First Circuit).

### 3.   Merits

### a.   Legal Standard for Sentence Reduction

As explained by the First Circuit, 18 U.S.C. § 3582(c)(1)(A) "carved out a narrow exception to the general rule that '[a] court may not modify a term of imprisonment once it has been imposed.'" *Quirós-Morales*, 83 F.4th at 84 (quoting *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021)). The statute allows district courts to grant a request for sentence reduction if three conditions are met: "extraordinary and compelling reasons warrant a sentence reduction, such a reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and consideration of the 18 U.S.C. § 3553(a) factors counsels in favor of a reduction." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

In 2023, the United States Sentencing Commission clarified the meaning of "extraordinary and compelling circumstances" within 18 U.S.C. § 3582(c)(1)(A) by promulgating Amendment 814. *See U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 814. The Sentencing Commission issued an accompanying policy statement providing further guidance on the six categories of extraordinary and compelling bases warranting a sentence reduction: the defendant's 1) "medical circumstances", 2) "age", and 3) "family circumstances"; 4) if the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) if the defendant received an "unusually long sentence." U.S.S.G. § 1B1.13(b).

In addition to extraordinary and compelling reasons, a defendant must demonstrate a grant of sentence reduction comports with the factors described in 18

U.S.C. § 3553(a). *Saccoccia*, 10 F.4th at 3. This statutory section provides that the Court must consider, *inter alia*:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

### b.    Factual Background

#### i.    Section 3553(a) Factors

##### aa.    Ms. Talmer's History and Characteristics

Ms. Talmer is forty-four years old. *PSR* at 3. She had an inconsistent relationship with her father, who struggled with addiction and passed away in 2003, *id.*, but maintained a positive relationship with her mother until she passed away in December 2023. *Id.*; *Pet'r's Second Mot.* at 2-3. Ms. Talmer's childhood was difficult; in addition to her father's struggles, she suffered physical and sexual abuse at the hands of her stepfather, whom her mother remarried when Ms. Talmer was approximately seven years old. *PSR* at 22. Ms. Talmer reports a learning disability and being involved in special education classes in school, as well as struggling with mental health issues. *Id.*

Ms. Talmer has three children.  Her first marriage, now terminated, produced one daughter, an adult residing in Maine.  *Id.* at 22-23.  She also has two other teenage daughters from a subsequent relationship, although she reports her history of addiction resulted in losing these "children to state custody on multiple occasions" and that the "relationship later dissolved" when her partner was incarcerated.  *Id.* at 23.  Ms. Talmer speaks to a positive relationship with her two oldest daughters but is not in communication with her youngest daughter according to the wishes of her sister, who has had custody of her youngest daughter since 2014.  *Id.*  At the time of her sentencing, Ms. Talmer had been in a romantic relationship with her codefendant for approximately two-and-a-half years.  *Id.*  She reports significant physical and emotional abuse within the relationship.  *Id.* at 23-24.

The PSR notes a history of medical conditions, including back issues "for which she was historically prescribed fentanyl injections."  *Id.* at 24.  It also describes a long history of mental and emotional health struggles, beginning with her stepfather's abuse when she was approximately ten years old.  *Id.*  The PSR indicates previous diagnoses of "bipolar disorder, major depression, anxiety, and posttraumatic stress disorder (PTSD)," as well as hospitalization and medication related to suicidal behaviors.  *Id.* at 24-25.  She has also been diagnosed with "opioid use disorder (severe), stimulant use disorder (severe), [and] cannabis use disorder (severe)."  *Id.* at 25.

Ms. Talmer's record of substance abuse began with the use of marijuana and alcohol in high school, which escalated to the use of prescription opiates and cocaine

with her father in the year 2000. *Id.* She notes using drugs "on and off" her entire adult life, with the self-described peak of her addiction coming around 2015 and constituting consumption of one-half ounce of cocaine and ten grams of heroin per day, together with her codefendant. *Id.* Records reveal that she has "participated in numerous different treatment efforts" over multiple years. *Id.* at 25-26.

Ms. Talmer attended Old Orchard Beach High School between 1995 and 1998 through the eleventh grade. *Id.* at 26. As a young adult, she worked for her mother's cleaning company; in the years prior to her arrest, she also held different jobs at Subway and McDonald's. *Id.*

### bb.    Ms. Talmer's Criminal History

Ms. Talmer has a substantial criminal history, which has escalated over time. Between 2007 and 2009, she committed a series of relatively minor offenses including multiple thefts of merchandise worth less than $150, as well as convictions for tampering with public records, theft by unauthorized taking, unlawful possession of scheduled drug, and forgery. *Id.* at 11.

However, her criminal history intensified after that; she was convicted again of theft by unauthorized taking in 2010, violating conditions of release in 2011, and operating a vehicle with a suspended license in 2012. *Id.* at 11-12. In March 2013, she was charged with unlawful possession of a scheduled drug for which disposition was initially deferred; however, she subsequently violated her probation and was incarcerated for short period in January 2016, October 2016, and February 2018. *Id.* at 12-13. In April 2013, she was again charged with and in September 2013 convicted of theft by unauthorized taking. *Id.* at 14. Though her sentence of 364 days of

43

incarceration was suspended for all but fourteen days, she subsequently was charged with and convicted of violating the terms of her probation and was sentenced to six months of incarceration in January 2014. *Id.* Later in April 2013, she was charged with and later convicted of violating condition of release and with operating a vehicle with a suspended license, and again with violating conditions of her release in May 2013. *Id.* at 14-15. In June 2013, the state of Maine again charged Ms. Talmer with unlawful possession of scheduled drugs and with violating the conditions of her release, and she was convicted of those charges and sentenced to a brief period of incarceration and fined. *Id.* at 15.

In July 2014, Ms. Talmer was charged with misuse of a public benefits instrument and violating a condition of her release relating to stolen EBT cards, and in January 2016, she was sentenced to ninety days of incarceration. *Id.* at 16. Then, in September 2017, Ms. Talmer was charged unlawful furnishing of a scheduled drug related to a "street level hand-to-hand transaction" observed by the Biddeford Police Department, and in March 2018, she was fined $400. *Id.* at 16-17. She then received additional charges for violating the conditions of her release in January 2019 and in April 2019, she was given an unconditional discharge for that violation. *Id.* at 17.

### cc.     The Nature and Circumstances of Ms. Talmer's Present Offenses

Ms. Talmer's present convictions and sentence are based on two distinct incidents. The first, charged by information in case number 2:21-cr-00004-JAW-01, occurred on October 25, 2019; the Westbrook Police Department stopped a vehicle operated by Ms. Talmer. *Id.* at 4-5; *Info.* at 1. The police officers' lawful search of the

44

vehicle "revealed 40.65 grams of fentanyl, which was packaged in 10-gram quantities and wrapped tightly in cellophane, located in Talmer's sweatshirt." *PSR* at 5. While being searched, Ms. Talmer also "dropped a sandwich bag which contained 2.82 grams of cocaine base" and officers "located two pills, determined to be 20 milligram amphetamine and dextroamphetamine, in her pocket." *Id.* Elsewhere in the car, officers also located "two 'crack pipes' and a chore boy located in the vicinity of the driver's compartment; a scale and $694 U.S. currency located in Talmer's purse; a pill bottle containing 10 buprenorphine pills located in Talmer's purse; and a bag containing several unused needles, a scale, a box of unused sandwich baggies and two 'cook caps,' located in the trunk of the vehicle." *Id.* Ms. Talmer was arrested and officers discovered an additional 4.47 grams of fentanyl during her booking process." *Id.* Based on this conduct, Ms. Talmer was charged with possession with intent to distribute fentanyl. *Info.* at 1.

The second incident occurred on June 11, 2020 and was charged via indictment in case number 2:20-cr-00084-JAW-02. *PSR at 5.*; *Indictment* at 1. Again, law enforcement agents identified a vehicle operated by Ms. Talmer, who at that time was the subject of a felony warrant for her arrest. *PSR* at 5. Agents planned a "carefully orchestrated" stop of the target vehicle involving "law enforcement units driving different vehicles approaching from different positions." *Id.* According to plan, agents positioned their vehicles alongside and behind Ms. Talmer's vehicle as it travelled along Brighton Avenue in Portland, Maine; however, when they activated their blue emergency lights and an agent "made eye contact with Talmer through the

target vehicle's driver's side window," Ms. Talmer "accelerated rapidly while she turned the vehicle to force the target vehicle through a small space between the agent's vehicle and an uninvolved Chevrolet Suburban which was in front of the target vehicle." *Id.* at 5-6.  After dragging the agent's vehicle some distance, Ms. Talmer again accelerated, striking a bystander's pickup truck in her attempt to escape. *Id.* at 6.  Seeing the vehicle's reverse lights illuminate, a police officer "applied an 'active containment' of the target vehicle by maintaining gentle and consistent pressure on the vehicle while taking up any space Talmer could gain by ramming into the agent's vehicle or the pickup truck she was trying to push through." *Id.*

The PSR describes the events of her physical arrest once her vehicle was contained:

> While Talmer was surrounded by officers and agents on foot and unprotected, she continued to shift her vehicle from drive to reverse rapidly, as she tried to escape. While she quickly shifted gears, Talmer accelerated the target vehicle to the point that the engine rev limiter activated, making a distinct noise that officers identified as her giving the vehicle maximum power in attempt to break free. For several minutes, Talmer maintained these actions until she ultimately disabled the target vehicle's drivetrain and the vehicle began smoking from under the hood and caught fire, at which point an officer used a fire extinguisher to extinguish the fire. Both Talmer and [codefendant] refused to comply with officer commands to stop accelerating, show their hands and exit the vehicle, so officers broke both the driver's side and passenger's side windows and took both into custody.

*Id.*  After her arrest, Ms. Talmer made a phone call to her mother, in which she asked her mother to "'tell Butchie and Bruce that Timmy is a rat,' as he 'sold [her] and Johnny out.'  She reiterated to her mother how important it was to tell the others that Timmy ratted her out." *Id.* at 7.

46

In the search of the vehicle following Ms. Talmer's arrest, law enforcement agents uncovered:

> 3 iPhones; 2 different hotel room keys; a glass smoking pipe located on the driver's side floor board; a chore boy (commonly used as a filter to ingest cocaine base) located on the driver's seat; a large quantity of unused sandwich bags (often used for breaking drugs down into smaller quantities for sale) located in the center console; $1,418 U.S. currency located in [codefendant's] pants pocket; multiple wax paper-covered cylindrical shaped objects containing suspected fentanyl; a black drawstring bag which contained 30 wax paper-covered cylindrical shaped objects containing suspected fentanyl; approximately 9- 8 milligram suboxone strips located within the black drawstring bag; two tied off plastic baggies containing suspected cocaine base within a purse; $200 cash located within the purse; a clear plastic bag containing a brown powdery substance, later determined to be fentanyl residue, located within the purse. A lab report later determined the packages containing suspected fentanyl contained a total of 325.384 grams of fentanyl. Although the suspected cocaine base contained 8.8 gross grams of cocaine base, the Probation Office has not received the lab report which confirms the actual quantity of cocaine base; therefore, in lenity to the defendant, only 5 grams of cocaine base will be attributed to the defendant for this quantity, as the gross gram weight likely contains the weight of the packaging. The parties agreed this was a fair quantity to attribute to the cocaine base seized from the vehicle.

*Id.* Ms. Talmer was charged with possession with intent to distribute forty grams or more of a mixture containing a detectable amount of fentanyl for this conduct.

*Indictment* at 1.

### ii.        July 6, 2021 Dual Sentencing

During sentencing, Judge Singal explained the applicable Guidelines range:

> The base offense level is 30. I find that she recklessly -- defendant recklessly created a risk of death or serious bodily injury to another person in fleeing from law enforcement; two levels are added to 32. She has a criminal history category of V, resulting in an advisory guideline range of 188 to 235 months.

47

*Sentencing Tr.* at 24:15-20.  Judge Singal further noted that he "[was] not going to give her a reduction for acceptance in this case" based on Ms. Talmer's conduct as "an individual charged with possession with intent to distribute drugs giving drugs to other inmates and acting in a manner in the jail that to me does not indicate acceptance of responsibility." *Id.* at 14:25-15-4.  However, based on representations made by the Government in the plea agreement, Judge Singal applied a three-level variance, for which the Guidelines range contemplated a range of 140 to 175 months. *Id.* at 15:11-13.

Before imposing the sentence, Judge Singal noted several considerations the Court had made in determining Ms. Talmer's sentence.  First, he explained that he "carefully considered the advisory guideline range" and considered "the nature and circumstances of the offense, the personal history and record of this defendant, the seriousness of the offense, the need for just punishment, and the need to protect the public from further crimes of this defendant." *Id.* at 25:10-16.  He also addressed Ms. Talmer's "nightmare of a childhood," noting "[t]he abuse, the addiction, drug use, the physical and sexual abuse obviously left scarring on this defendant that remain today." *Id.* at 25:17-19.

However, Judge Singal further recognized that Ms. Talmer's conduct "display[ed] a complete disregard for the rules of society," pointing out that many of her "offenses were perpetrated during the period she was either on bail or probation or when there was outstanding arrest warrants for her." *Id.* at 26:2-4.  Quoting one of her probation officers, he noted "Ms. Talmer thrives on chaos, and if chaos is not

48

present she creates it." *Id.* at 26:7-8. He also pointed out that her conduct during her June 20 arrest "easily could have caused . . . substantial injury or even death to bystanders, as well as the police." *Id.* at 26:15-16. Finally, he recognized a disparity between Ms. Talmer's words and her actions, stating "[s]he tells me that she has seen new light in jail; yet I have these reports of . . . what I see as consistent attempts again to be undisciplined by the rules imposed on her." *Id.* at 26:18-21.

After considering the totality of the circumstances, Judge Singal concluded that "even the bottom of the advisory guideline range in this case, even after the three-level reduction, is too much for a woman who has not served more than six months," *id.* at 26:22-24, and chose to depart downward from the recommended range. Thus, Judge Singal sentenced Ms. Talmer to a ninety-five month term of incarceration on each of Count One of docket number 20-cr-00084-JAW-02 and Count One of docket number 21-cr-00004-JAW-01, to be served concurrently; a supervised release term of four years on Count One of docket number 20-cr-00084-JAW-002 and three years on Count One of docket number 21-cr-00004-JAW-01, to be served concurrently; no fine; and a $200 total special assessment. *Id.* at 27:11-21, 29:4.

### c. Discussion

#### i. Extraordinary and Compelling Reasons

18 U.S.C. § 3582(c)(1)(A)(i) authorizes federal courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." As explained, in U.S.S.G. § 1B1.13(b), the Sentencing Commission provided discrete categories of extraordinary and compelling bases for relief; as relevant here, Ms. Talmer's third motion specifically implicates several of these categories; specifically:

"(1) Medical circumstances of the defendant," "(3) Family circumstances of the defendant," "(4) Victim of Abuse," and "(5) Other reasons." *Id.* The Court considers whether Ms. Talmer's motion establishes any of these bases for relief.

### aa.    Medical Circumstances

First, § 1B1.13(b)(1) provides various categories of medical circumstances that rise to the level of warranting judicial relief. Subsection (A) contemplates a defendant "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)" and gives the examples of "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13(b)(1)(A). Subsection B describes a defendant who is (i) "suffering from a serious physical or medical condition," (ii) "suffering from a serious functional or cognitive impairment," (iii) "experiencing deteriorating physical or mental health because of the aging process," and (iv) "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Subsection C considers a defendant "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Finally, subsection D describes the circumstances under which:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

In her motion for sentence reduction, Ms. Talmer raises three discrete medical issues that she asserts require surgery: her right foot, skin cancer, and her back. Beginning with her foot, Ms. Talmer tells the Court she "recently went to an outside doctor because of [her] right foot," which she "can bar[el]y walk on." *Letter to the Court* at 1. The Court understands her to be complaining of pain associated with her diagnosis of what she calls "plantiophasicoitious," *id.*; Ms. Talmer did not provide any medical records with further information on her injury and the Court's research could not identify a medical condition by this name.

The Court's best guess is that Ms. Talmer's reference is to plantar fasciitis. While the Court sympathizes with Ms. Talmer, assuming the Court is correct that she is suffering from plantar fasciitis, this is not a "terminal illness," nor does a correctional facility prevent her from providing self-care. U.S.S.G. § 1B1.13(b)(1)(A), (B). Ms. Talmer has not provided the Court with any information that would allow it to conclude otherwise. Further, Ms. Talmer has not established that plantar fasciitis is a condition that requires specialized care which is not being provided at the FCI Danbury facility, thereby placing her at risk of a serious deterioration in health or death. U.S.S.G. § 1B1.13(b)(1)(C). Finally, this condition is not an

infectious disease or public health emergency within the meaning of U.S.S.G. § 1B1.13(b)(1)(D).

Turning to her skin cancer, Ms. Talmer tells the Court that she "was diagnosed with skin cancer" while in custody and "had several surger[ie]s to remove the cancer. *Letter to the Court* at 1. She claims she has "not had any check[]ups at all." *Id.* Melanoma can undoubtedly be a serious disease; however, completed surgery seems to indicate that any pressing issues were resolved and Ms. Talmer has presented no medical record evidence to suggest otherwise. Thus, the Court would be hard-pressed to conclude that this condition currently manifests as a "terminal illness," or her incarcerated status has prevented her from receiving a reasonable standard of medical care. Ms. Talmer's history of skin cancer thus also fails to establish an extraordinary and compelling basis for relief.

Finally, the Court considers Ms. Talmer's most significant and well-supported medical condition: her back injury. Ms. Talmer tells the Court that a recent MRI establishes that she requires back surgery, *Pet'r's Third Mot.* at 1, and attaches the records of medical examinations spanning from May 2018 to April 2014. The oldest record, an assessment by Maine Medical Partners. "reveal[ed] a right-sided disc herniation at L3-4, with the potential for L3 nerve root impingement." *Me. Med. Partners Rep. 5/1/2018* at 1. In February of 2019, she received "trigger point injections," and "discussed the possibility of adding a muscle relaxer medication" with doctors. *Elation EMR 2/8/2019* at 1; *Me. Med. Partners Rep. 2/8/2019* at 1. During a visit in March 2019, she was informed doctors may "recommend considering

proceedings to radiofrequency neurolysis," but in the event of inadequate relief, they would recommend she "[r]eturn to spine center for reevaluation." *Elation EMR 3/8/2019* at 1.

Her most recent records, from April 2024, state the doctor's impression of the current condition of Ms. Talmer's back:

Impression:

L3-L4 grade 1 anterolisthesis with disc osteophyte complex asymmetric to the right causing moderate right and mild to moderate left subarticular and foraminal narrowing mildly encroaching on right L3 and L4 nerve roots. Mild central canal narrowing.

L5-S1 disc osteophyte complex/degenerative changes with tiny left foraminal synovial cyst causing moderate left foraminal narrowing contacting the left L5 nerve root. Additional disc osteophyte complexes/degenerative changes with mild to moderate subarticular and foraminal narrowing, as described.

Marrow and mild surrounding soft tissue edema associated with left greater than right L5-S1 facet arthropathy, most likely degenerative, less likely infections/inflammatory, correlate clinically.

*Diagnostic Imaging p. 2* at 1. The Court is not an expert in medical diagnoses nor treatment. However, a review of her records reveals no statements from doctors verifying Ms. Talmer's assertion that surgery is required or may relieve her pain.

A defendant bears the burden of establishing her entitlement to compassionate release. *See, e.g.*, *United States v. Galiany-Cruz*, No. 22-1196, 2023 U.S. App. LEXIS 26539, at *1 (1st Cir. June 6, 2023) ("movant bears the burden of establishing extraordinary and compelling reasons") (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)); *United States v. Greenlaw*, No. 1:18-cr-00098-JAW-06, 2021 U.S. Dist. LEXIS 66670, at *20 (D. Me. Apr. 6, 2021) ("[movant] bears the burden to

demonstrate entitlement to compassionate release"). While the Court is sympathetic to Ms. Talmer's back condition, her filings do not meet her burden to provide the Court with the information it would need to conclude her condition rises to the level of an extraordinary and compelling medical condition within the meaning of U.S.S.G. § 1B1.13(b)(1). Ms. Talmer's brief and conclusory statements that she requires surgery and that incarceration is exacerbating her condition lack support from the medical records she provided; to be entitled to relief, she must demonstrate why her condition is extraordinary and compelling within the statutory definition of the phrase.

Ms. Talmer also directs the Court to *United States v. Sayegh*, 2023 U.S. Dist. LEXIS 226253, in which she accurately points out a Southern District of New York judge granted compassionate release to a movant based on his "'[m]ild to moderate spondylosis' and 'multilevel mid to lower lumbar spine facet arthrosis,'" "worsening sciatica, which has rendered his left leg entirely numb," and "persistent, severe back pain [that] has also caused [the movant] to have trouble sleeping, despite taking prescription sleep medications." *Id.* at *3. The *Sayegh* Court concluded that his "condition of confinement . . . namely, a thin mattress" contributed to his back pain and "that these conditions do not exist outside confinement." *Id.* at *5. Ms. Talmer similarly attributes her pain, in part, to the mattresses in BOP facilities, adding a handwritten note to one of her medical records stating, "[t]he beds are maybe 5 or 6 inches on a metal table." *Elation EMR 2/8/2019* at 1. However, Mr. Sayegh had demonstrated why conditions outside BOP facilities would be sufficient to alleviate

his pain; the Court wrote: "[a]t home, Mr. Sayegh has access to a specialized orthopedic mattress and other equipment (such as a muscle stimulator and resistance bands) to alleviate his back pain." *Sayegh*, 2023 U.S. Dist. LEXIS 226253, at *5-6. Ms. Talmer has made no such arguments about why her release from confinement would similarly resolve her injury, and, in fact, her medical records indicate that she suffered this pain before her period of incarceration. *Me. Med. Partners Rep. 2/8/2019* ("Severity of the pain is: 9").

Finally, unfortunately for Ms. Talmer, *United States v. Sayegh* is far from the only case in which an incarcerated person moved for compassionate release based on back pain; in the vast majority, across numerous federal districts, courts denied those requests. *See, e.g.*, *United States v. Green*, No. 19 CR 496 (CM), 2023 U.S. Dist. LEXIS 92097, at *8 (S.D.N.Y. May 25, 2023) (denying motion for compassionate release based on movant's alleged "physical disabilities — thoracic herniated disc in my upper back and two bulging disc in my low[]er back, including lumbar segment 4 and 5 damages causing nerve impingement"); *United States v. Barnhart*, 704 F. Supp. 3d 679, 684 (W.D. Va. 2023) (denying motion for compassionate release where movant alleged "a herniated disc at his C5-C6 vertebrae that causes pain in his neck and arms"); *United States v. Bates*, No. ELH-09-0183, 2020 U.S. Dist. LEXIS 194285, at *8 (D. Md. Oct. 20, 2020) (denying motion for compassionate release where movant alleged "a 'slipped disc' that required surgery and, prior to his incarceration, he received a series of cortisone injections in his back"). In line with this robust line of

55

caselaw, the Court concludes Ms. Talmer has not demonstrated an extraordinary and compelling medical circumstance justifying her release.

### bb. Family Circumstances

U.S.S.G. § 1B1.13(b)(3) clarifies when a defendant's family circumstances may warrant a grant of compassionate release:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

Ms. Talmer raises several family circumstances in her request for compassionate release. First, as preliminary matter, she references the unfortunate passing of her mother in December 2023; as previously discussed, her mother's passing removed any need for Ms. Talmer's release to provide otherwise unavailable care and the Court thus concludes these arguments are moot. Second, she notes that her oldest daughter is having a second child and her middle daughter is graduating

56

high school, and asks for her release so that she can "be a mom [and] [g]randmother." *Pet'r's Third Mot.* at 2.

The Court understands Ms. Talmer's desire to reengage with her daughters and grandchildren and certainly encourages her to do so upon her release. However, that parental desire itself is not extraordinary nor compelling within the definition of U.S.S.G. § 1B1.13(b)(3). Ms. Talmer has not indicated any members of her surviving family are incapacitated nor that she is the only available caretaker to satisfy the spirit of the rule. Indeed, the Defendant has not argued in any of her multiple motions, nor submitted information in any of her numerous attachments, that would allow the Court to conclude otherwise. Her request for early release pursuant to U.S.S.G. § 1B1.13(b)(3) is non-meritorious and unavailing.

At sentencing, the Court always acknowledges that it is never sentencing the defendant alone, but that its sentencing decisions affect a defendant's family, coworkers, and friends. When a defendant is incarcerated, it places a heavy burden on the members of their family and community to assist with, among other things, parental responsibilities. These consequences are, unfortunately, the reality of incarceration. The Court assumes that Judge Singal did not lightly impose this burden at her original sentencing, and the Court does not lightly maintain this burden now. That said, this is the reality for all incarcerated defendants and thus Ms. Talmer's desire to rebuild a relationship with members of her family cannot be considered "extraordinary" for the purposes of granting her early release.

### cc.    Victim of Abuse

U.S.S.G. § 1B1.13(a)(4) explains when defendants who suffer abuse during their term of incarceration are entitled to compassionate release, providing:

> The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
>
> > (A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or
> >
> > (B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);
>
> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.
>
> For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G. § 1B1.13(a)(5).

> 18 U.S.C. § 2246(2) defines a "sexual act" as:
>
> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

58

At several points in her filings, Ms. Talmer references a PREA case against a BOP official involving sexual abuse she suffered. She describes the conduct underlying this matter in the greatest amount of detail in her additional attachments to her second compassionate release motion,[13] writing:

> While in BOP custody, a male CO touched himself in front of me and another inmate asking for me to show him my breast [and] telling me that he has the power to make sure that I get stuck in transit O[]klahoma. He has been removed from BOP.

*Pet'r's Second Mot. Attachs.* at 5-6.

To be eligible for compassionate release, the guidelines require that the "misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or finding in an administrative proceeding." Ms. Talmer has not presented this Court with any evidence that the CO was criminally convicted, that she has been successful in her civil action, or that there has been a finding in her favor in an administrative proceeding. There is a potential escape valve if Ms. Talmer could demonstrate that the proceedings are unduly delayed or that she is in imminent danger. There is little information about her civil complaint and Ms. Talmer says that the offending CO has been removed from BOP. Therefore, she fails to fit within these exceptions.

---

[13]    As previously discussed, Ms. Talmer's second motion for compassionate release was filed on January 12, 2024, before thirty days had elapsed from her administrative request to BOP asking it to file a motion on her behalf. *Pet'r's Second Mot.* However, the additional attachments to this filing were filed on April 15, 2024, after that thirty-day threshold. *Pet'r's Second Mot. Attachs.* In accordance with the law of this Circuit, the Court will construe Ms. Talmer's pro se defendant's filings liberally. *Gakuba*, 2024 U.S. App. LEXIS 18703, at *1 (citing *Erickson*, 551 U.S. at 94). Thus, the Court includes the substantive points of these additional attachments in the consideration of her pending motion for compassionate release.

As she describes it, Ms. Talmer has a right to be concerned by this conduct, which the Court recognizes as traumatic, especially in light of her history of abuse. Nevertheless, even if the Court accepts Ms. Talmer's description of the male CO's misconduct for the purposes of Ms. Talmer's motion for compassionate release, Ms. Talmer does not allege she was the victim of any "contact," "touching," or "penetration." Ms. Talmer thus does not present the Court with information that would allow it to conclude she experienced a "sexual act' within the meaning of the statute.

The Court cannot grant compassionate release on this basis. As previously explained, courts are limited to only granting relief to defendants who demonstrate a specific extraordinary and compelling basis, as defined by the statute guided by the Sentencing Guidelines.

### dd.   Other Reasons

Lastly, U.S.S.G. § 1B1.13 provides a catch-all provision for circumstances that do not fit neatly within one of its explicitly described categories of extraordinary and compelling circumstances when:

> The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(a)(5).

Ms. Talmer raises two additional bases for compassionate release in her filings: the revocation of her FSA credits and the unsanitary, deplorable conditions of her incarceration at FCI Philadelphia. The Court already addressed why the former

complaint implicates BOP calculations regarding the execution of a federal sentence, and thus must be brought as a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in the district of confinement. *See, infra*, Section III.A. As Ms. Talmer is confined at FCI Danbury in Connecticut, the Court lacks jurisdiction to consider the merits of this claim.

Second, with regard to her complaints regarding the conditions of her confinement, the Court addresses this concern at length below in the context of her motions for hardship credit. *See, supra,* Section IV. As the Court will explain, challenges to the conditions of confinement "can only be asserted as a civil rights lawsuit against those responsible for the conditions, and in a district with jurisdiction over such persons." *United States v. Ramirez*, 2021 U.S. Dist. LEXIS 83839, at *1-2 (citing *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011)). Thus, this issue also fails to provide an extraordinary and compelling basis for granting Ms. Talmer's compassionate release motion.

### ee.    Rehabilitation

Pursuant to U.S.S.G.§ 1B1.13(d), "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." However, the Guidelines provide that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.*

Here, the Court commends Ms. Talmer's efforts to rehabilitate herself and prepare for a productive life following release. Achieving her GED and her

participation in the RDAP program, *Pet'r's Second Mot.* at 1-2, are significant accomplishments. The Court is encouraged that Ms. Talmer has endeavored to spend her period of incarceration productively, and, while it does not provide an independent ground for her release, strongly encourages her to continue to do so.

### ii.     18 U.S.C. § 3553(a) Factors

The Court now turns to the § 3553(a) factors to evaluate whether Ms. Talmer's sentence is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). *Id.*

Beginning with Ms. Talmer's history and characteristics, she undeniably has dealt with more than her fair share of difficulties. After suffering physical and sexual abuse at the hands of her stepfather, she struggled with mental health issues, including hospitalization for suicidal behaviors as a teenager. *PSR* at 22. Her own father incomprehensibly introduced her to hard drugs shortly after she became an adult and she herself acknowledges the use, and ultimately abuse, of drugs has been a constant for her entire adult life. *Id.* at 25. While she appears to have made numerous efforts at treating her drug addiction over the years, none appears to have succeeded prior to her current incarceration. *Id.* at 25-26.

Her criminal history is extensive, with relatively minor offenses for theft of merchandise valued below $150 in her twenties escalating to drug possession and distribution, vehicle operation offenses, more theft, and misuse of a public benefits instrument in her thirties. *Id.* at 11-17. Significantly, her encounters with the criminal justice system do not appear to have much of a deterrent effect; Ms. Talmer's record of probation violations, often for drug use, exceeds in number her initial

charges and resulted in multiple periods of incarceration, even when courts had initially imposed lenient sentences or probation. *Id.*

The nature and circumstances of the offenses for which Ms. Talmer is presently incarcerated are, in no unclear terms, deeply disturbing. Charged for two separate incidents, the first in October 2019 involved 40.65 grams of fentanyl packaged for distribution, plus other drugs identified throughout the search and her booking process. *PSR* at 5. Six months later, Ms. Talmer was back on the streets and, far from learning her lesson from the first charge, had significantly escalated the seriousness of her conduct. In the search subsequent to her arrest, Ms. Talmer was found in possession of over 325 grams of a mixture containing fentanyl, plus other drugs and paraphernalia. *Id.* at 7. Nearly as incriminating as the additional drugs, though, was Ms. Talmer's response to law enforcement: upon realizing police officers were seeking to detain her, she led officers on a car chase, crashing into police and pedestrian vehicles, and continuing her attempts to escape until officers literally broke through her car window and physically detained her. *Id.* at 6. Even after her arrest, her priority was to call her mother, not for help or to express remorse, but to inform her associates in the drug user and dealer community that "Timmy is a rat." *Id.* at 7.

At sentencing, Judge Singal considered "the nature and circumstances of the offense, the personal history and record of this defendant, the seriousness of the offense, the need for just punishment, and the need to protect the public from further crimes of this defendant" in imposing a sentence of incarceration of ninety-five

months. *Sentencing Tr.* at 25:10-16, 27:11-21. He specifically addressed Ms. Talmer's "nightmare of a childhood," including "[t]he abuse, the addiction, drug use, the physical and sexual abuse obviously left scarring on this defendant that remain today." *Id.* at 25:17-19. He also noted that her conduct during her June 2020 arrest "easily could have caused . . . substantial injury or even death to bystanders, as well as the police." *Id.* at 26:15-16.

Additionally, Judge Singal considered the Sentencing Guideline range; based on her base offense level of 32 and her Criminal History Category V, her recommended guideline range was 188 to 235 months. *Sentencing Tr.* at 24:15-20. While he found that Ms. Talmer's conduct before sentencing prevented him from granting the Government's request for three-level reduction for acceptance, *id.* at 14:25-15-4, he honored representations made by the Government in the plea agreement and nonetheless applied a three-level variance, leading to a revised Guidelines range of 140 to 175 months. *Id.* at 15:11-13. Finally, as previously noted, he concluded that the low end of this range was still "too much for a woman who has not served more than six months," *id.* at 26:22-24, and departed downward further to impose a final sentence of ninety-five months.

This Court accepts and agrees with Judge Singal's analysis and conclusions at sentencing and concludes a further grant of sentence reduction would not serve the purposes of reflecting the seriousness of Ms. Talmer's offense and promoting respect for the law. Ms. Talmer notes her brother passed away of an overdose during her period of incarceration, notably of the same drug that she was convicted of

64

distributing, *Pet'r's Third Mot.* at 2, so she understands the need to deter those who would bring these substances into our communities. Further, the Court observes that Judge Singal exercised substantial leniency based on Ms. Talmer's prior record of incarceration; however, leniency must have a limit. As discussed, Ms. Talmer put law enforcement and the public at significant risk, not just through her distribution of drugs, but also in her attempts to flee when faced with arrest. The Court takes seriously its obligation to protect the public from further crimes of the Defendant.

For all these reasons, the Court dismisses Ms. Talmer's motion for compassionate release.

## IV.  MOTIONS FOR HARDSHIP CREDIT

### A.  The Parties' Positions

#### 1.  Ms. Talmer's January 12, 2024 Motions for Hardship Credit

On January 12, 2024, Ms. Talmer filed two separate motions for hardship credit. In the first, Ms. Talmer asks the Court to award her two days credit for each day served for time spent incarcerated at a federal FMC Carswell facility in Fort Worth, Texas. *See Pet'r's First Hardship Mot.* Ms. Talmer explains that she was placed in "lock-down" status for approximately 279 days "due to COVID-19," which she argues violates her constitutional protections under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. *Id.* at 1-2, 5. She raises six specific aspects of her detention which she alleges violate her rights: (1) FMC Carswell operates a "communal segregation prison limiting liberty interest afforded to the inmates in general population"; (2) "access to recreation services is limited to 2 hours per week" and "several days can pass without any recreation at all"; (3) dietary

needs of inmates are not being met and "'meals' can be considered 'gruel'"; (4) an inmate sometimes spend "an excess of 22 hours in a single day" in her cell, which "amount[s] to solitary confinement and serious and significant deprivation of liberty"; (5) the lack of movement without being placed in protective, administrative, or disciplinary segregation is "a disproportionate punishment to [her] offense"; (6) "[p]ersonal hygiene is significantly degraded" such that "cleanliness . . . and common illness, which are easily avoidable, can become a problem." *Id.* at 2-4.

Ms. Talmer claims these conditions violated her right to be free of cruel and unusual punishment, that a prisoner being deprived of personal hygiene or diet violates the Eighth and Fourteenth Amendments, and that punishment disproportionate to the offense violates the Fifth Amendment. *Id.* at 4-5. Based on the foregoing, Ms. Talmer requests the Court grant her hardship credit and award her two days credit for each day she served at FMC Carswell. *Id.* at 5-6.

In her second motion for hardship credit, filed the same day, Ms. Talmer again requests the Court award her two days credit for each day she served, though this motion describes her 240 days of incarceration at FDC Philadelphia in Philadelphia, Pennsylvania. *See Pet'r's Second Hardship Mot.* She again implicates the Fifth, Eight, and Fourteenth Amendments to the United States Constitution and enumerates the conditions which she claims violated her rights, which include: (1) "a communal segregation prison limiting liberty interest[s] afforded to the inmates in general population"; (2) "access to recreation services is limited to 2 hours per week," some days include no recreation time, and the facility is "on the third floor downtown

so [inmates] never get outside"; (3) dietary needs of inmates are not met and the long lockdown hours resulted in inmates "us[ing] the brown water from sinks located in cells to drink"; (4) some days, an inmate "spends in her cell . . . an excess of 22 hours in a single day period"; (5) the lack of movement without being placed in protective, isolated, administrative, or disciplinary segregation constitutes a punishment disproportionate to the offense; (6) personal hygiene is degraded, including facility cleanliness and common illness; (7) "[m]edical care is scarce . . . [and] [i]t can take months to see medical staff including dental, medical, and mental health doctors"; (8) unsanitary living conditions, including "rodents and bugs infesting the living quarters and food service" and "flooding of the unit and cells with water and excrement." *Id.* at 2-6.

Ms. Talmer concludes the facility's lockdown due to COVID-19 violated her constitutional rights to be free of cruel and unusual punishment, and her rights pursuant to the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. She again requests the Court grant her a hardship credit and award her two days credit for each day she served at FDC Philadelphia during the COVID-19 lockdown, which she asserts "began . . . March 30, 2020 and is still ongoing" at the time of writing her letter on December 29, 2023. *Id.* at 6-7.

> **2. The Government's February 2, 2024 Response in Opposition to Motions for Hardship Credit and to Motion for Sentence Reduction**

In its consolidated opposition filed on February 2, 2024, the Government opposed both of Ms. Talmer's motions for hardship credit, arguing that she "fails to show that she has exhausted her administrative remedies within the BOP, and

because the Court lacks authority over Talmer's challenges to the execution of her sentence." *Gov't Second Opp'n* at 1. The Government says a petition for habeas corpus under 28 U.S.C. § 2241 is the "proper vehicle" to bring a claim for hardship credit. *Id.* at 3 (citing *United States v. Glantz*, 884 F.2d 1483, 1489 (1st Cir. 1989); *Francis v. Maloney*, 798 F.3d 33, 36 (1st Cir. 2015); *United States v. Wilson*, 503 U.S. 329, 335 (1992)). To file a § 2241 petition, the Government posits "a federal inmate first must exhaust his or her administrative remedies within the BOP." *Id.* (citing *McKinney*, 2022 U.S. Dist. LEXIS 100068, at *5-7). Even after a defendant properly exhausts her administrative remedies, the Government says, the "§ 2241 petition must be filed in his or her district of confinement and name the warden as respondent." *Id.* at 4 (citing *Rumsfeld*, 542 U.S. at 447).

The Government argues Ms. Talmer's motions for hardship credit fail at each of these steps. First, it points out that "there is no evidence in the record or in Talmer's motions that she brought her challenges concerning the computation . . . hardship credits to the proper prison officials and then exhausted her administrative remedies within the BOP prior to seeking relief with the Court." *Id.* at 4. Second, "even assuming for the sake of argument that Talmer had properly exhausted her administrative remedies within the BOP," the Government contends that her motions should nonetheless be dismissed because they were filed in the district of her sentencing, rather than the district of her current confinement. *Id.* at 4-5.

### B.    Legal Standard

As previously discussed, "[f]ederal courts are courts of limited jurisdiction.'" *Calvary Chapel of Bangor*, 984 F.3d at 30 (quoting *Rhode Island v. EPA*, 378 F.3d at

22).  Other federal district courts have addressed at length the proper procedure for bringing a defendant seeking hardship credit in highly analogous circumstances.

In *United States v. Ramirez*, No. 13-10140-02-JWB, 2021 U.S. Dist. LEXIS 83839 (D. Kan. May 3, 2021), a defendant brought a motion alleging "limited recreational opportunities, substandard meals and water, extended periods locked in a cell, inadequate hygiene opportunities, and a lack of medical care, all allegedly in violation of her Fifth, Eighth, and Fourteenth Amendment rights," specifically for the "lock-down" period due to the COVID-19 pandemic, and asked the court to "grant the defendant two days credit for [each] one served" in these conditions." *Id.* at *1-2.  The *Ramirez* Court determined it "ha[d] no jurisdiction to grant the relief requested by Defendant or even to address the merits of her complaint" because "[t]he motion seeks a shortened period of confinement, which means it is properly characterized as a motion for a writ of habeas corpus under 28 U.S.C. § 2241." *Id.* at *2 (citations omitted).  Quoting the Supreme Court in *Rumsfeld*, 542 U.S. at 443, the *Ramirez* Court explained that jurisdiction to hear § 2241 petitions "lies in only one district: the district of confinement." *Id.* at *3.  Noting the defendant in that case was confined in the state of Alabama, the *Ramirez* Court concluded the District of Kansas "accordingly has no jurisdiction to address a § 2241 petition from her." *Id.* at 3-4.

The *Ramirez* Court also considered whether "the motion might be construed as challenging only the conditions of Defendant's confinement, rather than the duration of her sentence." *Id.* at 4.  However, even construing the motion as such, the *Ramirez* Court ruled Ms. Ramirez's claims "can only be asserted as a civil rights lawsuit

against those responsible for the conditions, and in a district with jurisdiction over such persons." *Id.* (citing *Standifer*, 653 F.3d at 1280).  Based on its conclusions, the *Ramirez* Court dismissed Ms. Ramirez's motion without prejudice for lack of jurisdiction.

Similarly, in *United States v. Garten*, No. 3:12-CR-30320-NJR-1, 2021 U.S. Dist. LEXIS 85872 (S.D. Ill. May 5, 2021), a defendant asked the Court "to award her two days of credit for every one of the estimated 375 days she claims she has been in lockdown at FCI[ ]Aliceville due to COVID-19."  *Id.* at *1.  In that case, the incarcerated defendant alleged "she has been locked in her cell for 22 or more hours a day, she has had limited access to recreation, the meals can be considered 'gruel,' the water is brown, personal hygiene is 'significantly degraded,' and medical care is scarce"; she claimed "these conditions [we]re a violation of her constitutional right to be free from cruel and unusual punishment."  *Id.*  The Southern District of Illinois ruled that it "lack[ed] jurisdiction to give her credit for her time in lockdown," *id.* at *3-4, and informed Ms. Garten:

> To the extent [she] wishes to challenge the challenge the constitutionality of her conditions of confinement at FCI Aliceville in a civil rights action, or to challenge the BOP's computation of credit awards against her federal sentence in a habeas action under 28 U.S.C. § 2241, such actions must be brought in the [the district of her confinement].

*Id.* at *4.

## C.    Discussion

The Court recognizes that the jurisprudence of this district and the First Circuit has long recognized that challenges to jail-time credit determinations may be

brought as § 2241 habeas petitions after a defendant properly exhausts her administrative remedies.  *See, e.g.*, *United States v. Garcia*, No. 2:17-cr-00100-JDL-1, 2023 U.S. Dist. LEXIS 170952, at *2 (D. Me. Sep. 26, 2023) ("'Once administrative remedies are exhausted, prisoners may then seek judicial review of any jail-time credit determination' by filing a habeas petition.") (quoting *Rogers v. United States*, 180 F.3d 349, 358 (1st Cir. 1999)).  As in *Ramirez* and *Garten*, the Court concludes that Ms. Talmer's requested relief of a hardship credit constitutes a challenge to the execution of her sentence, and as such, is properly brought as a habeas petition pursuant to 28 U.S.C. § 2241 in the district of her confinement.  *See Thompson v. United States*, 536 F.2d 459, 460-61 (1st Cir. 1976) ("a habeas corpus proceeding is properly brought before the district court with jurisdiction over a prisoner or his custodian").  As previously discussed, Ms. Talmer is presently incarcerated at FCI Danbury within the District of Connecticut; thus, this Court lacks jurisdiction over her claim.

Moreover, the Court notes that, in the context of her request for time served credits, Judge Singal previously informed Ms. Talmer that, to challenge BOP's calculations, "a defendant must first exhaust her administrative remedies and then initiate a habeas corpus proceeding under 28 U.S.C. § 2241 in the district possessing authority over her place of confinement."  *Order on Mots. for Compassionate Release & Credit for Time Served* at 3 (citing *Rogers*, 180 F.3d at 357-58; *United States v. Barrett*, 178 F.3d 34, 50 n.10 (1st Cir. 1999) ("[A] § 2241 petition is properly brought in the district court with jurisdiction over the prisoner's custodian")).  In addition to

bringing her claim in the district of her sentencing, rather than the district of her confinement, the Court further notes that the record contains no evidence indicating Ms. Talmer first raised her concerns with BOP personnel; as such, she has also failed to exhaust her administrative remedies before bringing her claim in court as required. *See Rogers*, 180 F.3d at 358.

Finally, the Court finds persuasive the analysis of the *Ramirez* Court, which alternatively construed that defendant's motion as a challenge to "the conditions of Defendant's confinement, rather than the duration of her sentence." *Ramirez*, 2021 U.S. Dist. LEXIS 83839, at *4. Even so, the *Ramirez* Court concluded it nonetheless lacked jurisdiction over such a claim, which "can only be asserted as a civil rights lawsuit against those responsible for the conditions, and in a district with jurisdiction over such persons." *Id.* (citing *Standifer*, 653 F.3d at 1280). This Court agrees with that conclusion; even if it construes Ms. Talmer's motion as a challenge to her conditions of confinement, the Court lacks jurisdiction to adjudicate her claim. *See also Stafford v. Briggs*, 444 U.S. 527 (1980) (finding a civil rights action "must be brought in the district where all the defendants reside or in which the claim arose").

The Court dismisses without prejudice Ms. Talmer's Motion for Hardship Credit for Hard Time Served, No. 2:20-cr-00084-JAW-2 (ECF No. 174) and her Motion for Hardship Credit for Hard Time Served, No. 2:20-cr-00084-JAW-2 (ECF No. 176).

### V.    MOTION TO APPOINT COUNSEL AND FOR HOME CONFINEMENT OR A REHABILITATION CENTER

#### A.    The Parties' Positions

##### 1.    Ms. Talmer's September 24, 2024 Motion for Appointment of Counsel and for Home Confinement or a Rehabilitation Center

On September 24, 2024, Ms. Talmer filed a motion asking the Court to appoint counsel and to revise her sentence to home confinement or confinement in a rehabilitation center.  *Pet'r's Mot. for Counsel & Home Confinement*.  In her motion, Ms. Talmer raises a plethora of concerns, which she presents as an enumerated list. First, she notes "the [BOP] has moved [her] several times. Each move has had devastating consequences for [her]." *Id.* at 2.  She alleges these consequences include a loss of personal property, a loss of FSA credit hours, and mental and physical health effects from each move.  *Id.*  Second, she avers she is awaiting back and mouth surgeries, respectively, and adds that her transfer between facilities affected her access to cleaning supplies such that her medical conditions now include infected gums.  *Id.*  Third, Ms. Talmer explains she was participating within the FSL Fit mental health treatment program "where an inmate will hold another inmate accountable for behaviors," and informs the court "[t]he cruelty that has been allowed against [her] has had traumatic consequences." *Id.*  Fourth, Ms. Talmer reminds the Court that her mother regrettably passed away in December of 2023 and that she had previously requested release to care for her, which was not granted.  *Id.* at 3. Fifth, she tells the Court that her "brother died due to an overdose" in 2024 and notes her belief that "she could have helped both members preventing their death."  *Id.*

Sixth and finally, Ms. Talmer states her daughter is pregnant with her second child and recently, upon encouragement from Ms. Talmer, left an abusive relationship, which has left her and her son living in a homeless shelter. *Id.* Ms. Talmer urges the Court to release her "to assist her family." *Id.*

Ms. Talmer concludes her letter by asking the Court to grant her release to home confinement or a residential treatment facility within the state of Maine. *Id.* at 4. She avers "[t]his would allow for mental and substance abuse treatment, as well as the ability to see her family." *Id.* She tells the Court that she has tried to raise her concerns to BOP staff, but claims "[t]he result is not a solution or even a response that is rational." *Id.* She recognizes that her sentence could have been higher and states she "is not ungrateful for these factual aspects of her case," but adds that "she simply requests . . . the proper housing requirements that she desperately needs and to be appointed counsel." *Id.* at 5.

### 2. The Government's October 15, 2024 Response in Opposition to Motion for Appointment of Counsel and for Home Confinement or a Rehabilitation Center

The Government opposed Ms. Talmer's latest motion on October 15, 2024. *See Gov't's Opp'n to Mot. for Counsel & Home Confinement.* Responding first to Ms. Talmer's request for release to home confinement or to a local residential treatment facility, the Government directs the Court to 18 U.S.C. § 3621(b), which provides: "[t]he [BOP] shall designate the place of prisoner's imprisonment." *Id.* at 3. Further, the Government says, the statute provides particular factors for the BOP to consider in determining the "appropriate and suitable" correctional facility, including: "(1) 'the resources of the facility contemplated'; (2) 'the nature and circumstances of the

offense'; (3) 'the history and characteristics of the prisoner'; (4) certain statements by the court that imposed the sentence; and (5) 'any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.'" *Id.* (citing 18 U.S.C. § 3621(b)). The Government also emphasizes the statute governs the respective authority of the BOP and the Court by providing:

> *Any order, recommendation, or request by a sentencing court* that a convicted person serve a term of imprisonment in a community corrections facility *shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.* Notwithstanding any other provision of law, *a designation of a place of imprisonment under this subsection is not reviewable by any court.*

*Id.* at 3-4 (citing 18 U.S.C. § 3621(b)) (emphasis added by the Government). Finally, directing the Court to 18 U.S.C. § 3624(c)(2), the Government avers Congress has authorized the BOP "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* at 4.

Turning to District of Maine caselaw, the Government notes that, in 2023, the Court determined that while it "may grant compassionate release to modify a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1), the Court may not order the remainder of an *unmodified* term of imprisonment to be served at home." *Id.* (citing *United States v. Mujo*, No. 1:15-cr-00072-JDL-2, 2023 U.S. Dist. LEXIS 9804, at *5-6 (D. Me. Jan. 20, 2023) (citing *Texeira-Nieves*, 23 F.4th at 59) (emphasis in original)); *see also United States v. Soto*, No. 2:17-cr-00157-JAW, 2022 U.S. Dist. LEXIS 173749, at *28 (D. Me. Sept. 26, 2022) ("In *Texeira-Nieves*, the First Circuit noted that despite the wide sweep of the compassionate release provision, the statute does not specifically grant a district court authority to change the site of a defendant's

confinement. The First Circuit elaborated that the statute's silence on this point comports with the BOP's plenary control . . . over the place of the prisoner's imprisonment") (cleaned up) (citing *Texeira-Nieves*, 23 F.4th at 58)).

Applying these standards to the case at bar, the Government identifies "two fundamental flaws" in Ms. Talmer's motion. *Id.* at 5. First, it points out that she "cites no legal authority to support her request, and the Government is aware of none." *Id.* Second, "nothing in Talmer's most recent motions claims to be a renewed request for compassionate release under 18 U.S.C. § 3582(c)(1), and the only way for the Court to order home detention would be to grant Talmer compassionate release." *Id.* (citing *United States v. Orton*, No. 1:12-cr-00117-JAW, 2023 U.S. Dist. LEXIS 226307, at *10 (D. Me. Dec. 20, 2023) (noting that "the only means for the Court to order home detention for [the inmate] would be to grant compassionate release to him, which is what [the inmate] is requesting now")). Based on the foregoing, the Government asks the Court to dismiss without prejudice Ms. Talmer's request for release to home confinement or to a residential treatment facility.

Responding to Ms. Talmer's motion for appointment of counsel, the Government decries the request as "neither constitutionally nor statutorily required." *Id.* at 6. While acknowledging that a defendant has a right to court-appointed counsel, the Government argues "the right to appointed counsel extends to the first appeal of right, and no further." *Id.* (citing *Pennsylvania v. Finley*, 481 U.S. at 551, 555 (1987); Fed. R. Crim. P. 44(a) (stating a defendant is entitled to court-appointed counsel "at every stage of the proceeding from initial appearance through appeal")).

76

According to the Government, this rule extends to indigent defendants. *Id.* (citing *United States v. Rossignol*, No. 1:14-cr-00033-JAW-1, 2024 U.S. Dist. LEXIS 83496, at *6 (D. Me. May 8, 2024)).

Additionally, the Government contends appointment of counsel is unnecessary in Ms. Talmer's case, specifically, because she "has not shown a fair likelihood of success on the merits; her claims are factually and legally straightforward, and the facts are both settled and known to Talmer." *Id.* (citing *United States v. Mala*, 7 F.3d 1058, 1063-64 (1st Cir. 1993) (outlining three-part test for whether to provide court-appointed counsel in the analogous postconviction habeas corpus context)). Thus, the Government asks the Court to deny Ms. Talmer's request for appointment of counsel. *Id.* at 7.

## B.    Release to Home Confinement or a Rehabilitation Center

### 1.    Legal Standard

First Circuit precedent has clearly established that "despite the wide sweep of the compassionate release provision, the statute does not specifically grant a district court authority to change the site of a defendant's confinement. The First Circuit elaborated that the statute's silence on this point comports with the BOP's plenary control . . . over the place of the prisoner's imprisonment." *Soto*, 2022 U.S. Dist. LEXIS 173749, at *28-29 (cleaned up) (citing *Texeira-Nieves*, 23 F.4th at 58). Thus, "[a] district court 'may not order home confinement in the absence of a sentence reduction, either pursuant to 18 U.S.C. § 3621(b) (granting discretion to the BOP to designate the place of imprisonment, subject to certain enumerated factors including the sentencing court's recommendation) or 18 U.S.C. § 3624(c)(2) (authorizing the

BOP to order a prisoner to serve the remainder of a sentence in home confinement)." *Orton*, 2023 U.S. Dist. LEXIS 226307, at *9 (quoting *Mujo*, 2023 U.S. Dist. LEXIS 9804, at *5-6).

At bottom, "[w]hile the court may grant compassionate release to modify a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1), the Court may not order the remainder of an *unmodified* term of imprisonment to be served at home." *Mujo*, 2023 U.S. Dist. LEXIS 9804, at *5-6 (citing *Texeira-Nieves*, 23 F.4th at 59) (emphasis in original).

## 2. Discussion

In the present case, Ms. Talmer does not characterize her motion as an additional motion for compassionate release, but rather as an independent request for release. The jurisprudence of this district establishes that the Court lacks the authority to convert a defendant's sentence of incarceration to home confinement absent a modification of sentence pursuant to 18 U.S.C. § 3582(c)(1). *See Mujo*, 2023 U.S. Dist. LEXIS 9804, at *5-6.

The Government is correct that Ms. Talmer does not characterize her motions as a renewed motion for compassionate release. *Gov't's Opp'n to Mot. for Counsel & Home Confinement* at 5. However, Ms. Talmer has brought multiple motions for compassionate release that remained pending at the time of her motion for release to home confinement or a rehabilitation center, the most recent of which raises many of the same substantive bases as are articulated in her motion for release to home confinement or to rehabilitation center. As a pro se litigant, the Court must construe Ms. Talmer's filings liberally. *See Gakuba*, 2024 U.S. App. LEXIS 18703, at *1 (citing

*Erickson*, 551 U.S. at 94).  Thus, the Court will consider Ms. Talmer's motion for release to home confinement or a rehabilitation center in the context of her previously addressed requests for compassionate release.

Unfortunately for Ms. Talmer, as the Court previously explained in Section III of this order, her requests for compassionate release have failed to present an extraordinary and compelling basis for her release, nor that granting release would comport with the 18 U.S.C. § 3553(a) factors.  Pursuant to the caselaw of the First Circuit, "the Court may not order the remainder of an *unmodified* term of imprisonment to be served at home."  *Mujo*, 2023 U.S. Dist. LEXIS 9804, at *5-6 (citing *Texeira-Nieves*, 23 F.4th at 59) (emphasis in original).  Because, for the reasons previously discussed, Ms. Talmer is not entitled to a modification of her term of imprisonment, the Court also dismisses Ms. Talmer's request for release to home confinement or to a rehabilitation center.

### C.    Appointment of Counsel

#### 1.    Legal Standard

Criminal defendants have a constitutional right to legal representation, a right which extends to indigent defendants; however, this right only extends as far as the first direct appeal of their conviction.  U.S. CONST. amend. VI; *Finley*, 481 U.S. at 555; *Rossignol*, 2024 U.S. Dist. LEXIS 83496, at *6.

In *United States v. Mala*, the First Circuit applied a three-part standard for when appointment of counsel is warranted: "(1) appellant has shown a fair likelihood of success on the constitutional claim, (2) that claim is  factually complex and legally

intricate, and (3) the facts are largely undeveloped and appellant (who is both incarcerated and indigent) is severely hampered in his ability to investigate them." *Id.*, 7 F.3d at 1063-64. This standard has been applied within this district to defendants' requests for appointment of counsel in the context of compassionate release. *See, e.g.*, *United States v. Doody*, No. 1:19-cr-00134-LEW, 2022 U.S. Dist. LEXIS 196266, at *2 (D. Me. Oct. 28, 2022) ("When determining whether an indigent defendant is entitled to counsel on a post-conviction motion, courts often look to the three-part test for whether to provide court-appointed counsel in the analogous habeas corpus context . . .. This test asks whether the defendant has 'a fair likelihood of success on' her claim, whether the issues raised are 'factually complex and legally intricate,' and whether 'the facts are largely undeveloped.'" (citing *Mala*, 7 F.3d at 1063-64); *United States v. Morris*, No. 2:16-cr-00002-DBH, 2020 U.S. Dist. LEXIS 141101, at 4 (D. Me. Aug. 7, 2020) (denying a motion to appoint counsel with regard to defendant's motion for compassionate release because it "cannot conclude that Defendant is likely to succeed on his anticipated request for relief under § 3852, that the request would be factually complex and legally intricate, or that the relevant facts would be largely undeveloped");

## 2. Discussion

Ms. Talmer's motions for appointment of counsel fails under the *Mala* test. As explained, she has failed to demonstrate a likelihood of success on her claim, much of which is barred on jurisdictional grounds and the rest of which fail to establish extraordinary and compelling reasons for release. Even if she could, the leniency

exercised by Judge Singal in her original sentence compared to the conduct giving rise to her incarceration provide an independent basis for denying her motion under the 18 U.S.C. § 3553(a) factors. Further, the case does not present complex, legally intricate, or underdeveloped facts. Rather, Ms. Talmer's cascade of motions and attachments provide the Court with a complete record of the basis for her requested relief. Thus, the Court dismisses Ms. Talmer's motion for appointment of counsel.

## VI. SUMMARY

In a slew of pending motions, Ms. Talmer brings her concerns regarding the revocation of her FSA credits, need for medical care, unacceptable BOP facility conditions, desire to reconnect with her family, and other reasons.

Regarding her claim that her FSA credits, as implicated in her motion to amend information, motions for sentence reduction, and multiple of her additional attachments, the Court concludes the calculation of time credits falls within the authority of BOP and the avenue for challenge is a habeas corpus petition brought in the district in which the movant is confined. Thus, the Court lacks jurisdiction to adjudicate these claims and dismisses the motions.

Ms. Talmer also moves for sentence reduction and, separately, for release to home confinement or a rehabilitation center based various medical conditions, family circumstances, misconduct by a BOP official, and her efforts at rehabilitation. While the Court commends Ms. Talmer on her efforts at rehabilitation, the motions fail to establish extraordinary and compelling bases for relief and the Court concludes

granting a sentence reduction would contravene the 18 U.S.C. § 3553(a) factors.  The Court dismisses these motions.

Ms. Talmer's two separate motions for hardship credits based on the conditions of her incarceration at various facilities, similar to her request to reinstate FSA credits, constitute a challenge to the execution of her sentence.  Such claims must also be brought as a petition for habeas corpus in the district of confinement, such that this Court lacks jurisdiction to hear the same.  The Court dismisses these motions.

Finally, Ms. Talmer moves for appointment of counsel to assist her with bringing her claims.  The Court finds she has not demonstrated the likelihood of success of her claim or that the factual record is undeveloped, and thus dismisses this motion.

## VII.    CONCLUSION

With respect to case number 2:20-cr-00084-JAW-2, the Court DISMISSES without prejudice Kristalyn Talmer's Motion for Sentence Reduction (ECF No. 169); Motion for Reduction of Sentence (ECF No. 172); Motion for Hardship Credit for Hard Time Served (ECF No. 174); Motion for Hardship Credit for Hard Time Served (ECF No. 176); Motion to Reduce Sentence and to Recode Case (ECF No. 184); and Motion for Court Appointed Counsel and for Home Confinement or Rehabilitation Center within Portland Maine (ECF No. 188).

With respect to case number 2:21-cr-00004-JAW-1, the Court DISMISSES without prejudice Kristalyn Talmer's Motion for Sentence Reduction (ECF No. 47);

Motion for Reduction of Sentence (ECF No. 49); Motion to Amend Information (ECF No. 53); Motion to Reduce Sentence and to Recode Case (ECF No. 56); and Motion for Court Appointed Counsel and for Home Confinement or Rehabilitation Center within Portland Maine (ECF No. 60).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of January, 2025